JJD:RAT/CMM
F. #2017R00578

```
FILED
U.S. D... IN CLERK'S OFFICE
           ... N.Y.
★  OCT 24 2017  ★
LONG ISLAND OFFICE
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

VINCENT J. TRIMARCO, JR.,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - X

INDICTMENT

Cr. No. **CR-17 0583**

(T. 18, U.S.C., §§ 2, 981(a)(1)(C),
982(a)(1), 982(b)(1), 1341, 1343, 1349,
1956(a)(1)(B)(i), 1956(h), 1957(a) and
3551 et seq.; T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

**AZRACK, J.**

**SHIELDS, M.J.**

THE GRAND JURY CHARGES:

## INTRODUCTION TO ALL COUNTS

At all times relevant to this Indictment, unless otherwise indicated:

### The Defendant

1. The defendant VINCENT J. TRIMARCO, JR., was a practicing attorney, who maintained a law office in Smithtown, New York (the "Trimarco Law Firm").

### Relevant Individuals

2. Co-Conspirator #1, an individual whose identity is known to the Grand Jury, resided in Suffolk County, New York. Co-Conspirator #1 was, at times, a client of the defendant VINCENT J. TRIMARCO, JR., and, at times, a business partner of TRIMARCO. From at least October 2011 until Co-Conspirator #1's death in August 2017, TRIMARCO managed Co-Conspirator #1's finances and paid most, if not all, of Co-Conspirator #1's bills.

3. Individual #1, an individual whose identity is known to the Grand Jury, was Co-Conspirator #1's child.

4. Individual #2, an individual whose identity is known to the Grand Jury, was Individual #1's child and Co-Conspirator #1's grandchild.

## The Defendant's Fraud Scheme

I. The Surrogate's Court Proceeding and the Federal Wrongful Death Action

5. In or about June 2005, Individual #1 died while in the custody of the Suffolk County Sheriff's Office. When Individual #1 died, he did not have a will and therefore an estate proceeding was subsequently commenced in Suffolk County Surrogate's Court (the "Surrogate's Court Proceeding") to resolve how the assets of Individual #1 would be distributed. In or about May 2007, Co-Conspirator #1 was named the administrator of Individual #1's estate. As the administrator, Co-Conspirator #1 was responsible for, among other duties, distributing the assets of Individual #1's estate according to the law that governs distribution of assets when an individual died intestate, or without a will.

6. A separate wrongful death action was commenced on behalf of Individual #1 in the United States District Court for the Eastern District of New York (the "Federal Wrongful Death Action"). In or about July 2007, the Federal Wrongful Death Action was amended to reflect Co-Conspirator #1 as the administrator of Individual #1's estate. On or about September 22, 2011, the parties resolved the Federal Wrongful Death Action, as part of which the plaintiff was awarded $3,000,000. As a result of the settlement, in or about October 2011, Co-Conspirator #1's attorney of record in the Federal Wrongful Death Action and TRIMARCO received $1,000,000 in legal fees and a check for the remaining $2,000,000 was made payable to Co-Conspirator #1 (the "Settlement Funds").

7. In or about April 2012, a petition was filed with the Suffolk County Surrogate's Court on behalf of Individual #2 seeking status as the rightful heir and sole distributee in regard to the distribution of funds. The Surrogate's Court enjoined Co-Conspirator #1 and his agents from "accessing, secreting, dissipating, disposing, encumbering, assigning, removing, or otherwise transferring or reducing" the Settlement Funds.

8. On or about June 5, 2012, a stipulation was signed restraining Co-Conspirator #1 and his agents from "secreting, dissipating, disposing, encumbering, assigning, removing, pledging, or otherwise transferring . . . the proceeds of the wrongful death settlement[,]" including identified assets previously purchased with the Settlement Funds, without further order of the Surrogate's Court. The stipulation was signed by the parties to the case and the Surrogate's Court Judge.

9. On or about August 8, 2012, the Surrogate's Court determined that Individual #2 was the sole heir and distributee of Individual #1's estate. As such, the Surrogate's Court issued an Order that directed Co-Conspirator #1 to refund the $2,000,000 in Settlement Funds that was previously distributed to Co-Conspirator #1 and again enjoined Co-Conspirator #1 and his agents from, among other things, "accessing, assigning, removing, or otherwise transferring or reducing" the Settlement Funds. On August 20, 2012, the Surrogate's Court August 8, 2012 Order was delivered to the Trimarco Law Firm.

10. In or about and between October 2011 and August 2017, the defendant VINCENT J. TRIMARCO, JR., and Co-Conspirator #1, together with others, orchestrated a scheme to defraud Individual #2 of the Settlement Funds and the proceeds therefrom. In addition, in or about and between October 2011 and the date of this Indictment,

TRIMARCO, together with others, orchestrated a scheme to defraud Co-Conspirator #1 and Individual #2 of the Settlement Funds and/or proceeds therefrom.

II. The Theft of Settlement Funds by TRIMARCO and Co-Conspirator #1

11. Specifically, the defendant VINCENT J. TRIMARCO, JR., and Co-Conspirator #1 used the Settlement Funds to purchase and sell various investments, including but not limited to several properties, luxury vehicles and shares in the Emporium, a nightclub and music venue in Patchogue, New York, and kept the Settlement Funds and proceeds therefrom from Individual #2, the rightful heir and sole distributee of Individual #1's estate. For example, using the Settlement Funds, TRIMARCO and Co-Conspirator #1 purchased, among other things: (a) a 2007 Jaguar XKR convertible (the "Jaguar") for $57,000; (b) a 2007 Ferrari F430 Spider (the "Ferrari") for $200,000; (c) real property in Ronkonkoma, New York for $150,000; (d) real property in Nesconset, New York for $101,000; and (e) real property in Hauppauge, New York for $385,000. In addition, approximately $800,000 of the Settlement Funds was used to invest in the Emporium. These "investments" were for TRIMARCO's and Co-Conspirator #1's self-enrichment and not for the purpose of investing for the estate of Individual #1. Indeed, the sale of these "investments" largely benefited TRIMARCO and none of the proceeds were distributed to Individual #2, the rightful heir and sole distributee of Individual #1's estate.

12. The defendant VINCENT J. TRIMARCO, JR., and Co-Conspirator #1 established various corporations and used previously established businesses in order to purchase and sell these investments, including but not limited to the following businesses: (a) the Gavin Scott Development Corporation ("GSDC"), a domestic business corporation formed in New York State; (b) South Shore Catering & Events, Inc., doing business as the

Emporium ("South Shore Catering"), a domestic business corporation formed in New York State to operate the Emporium; (c) FoFo's Toy Inc., doing business as the Emporium, a domestic business corporation formed in New York State ("FoFo's") and used to operate the Emporium; and (d) the Gavin Scott Development LLC ("GSDLLC"), a business incorporated in the State of Montana. TRIMARCO and Co-Conspirator #1 used these various businesses to conceal the true identity of the purchaser and seller of the investments purchased with the Settlement Funds.

13. In addition, the defendant VINCENT J. TRIMARCO, JR., and Co-Conspirator #1 used various bank accounts in furtherance of the fraud scheme, including but not limited to the following accounts: (a) a bank account entitled the "Law Offices of Vincent J. Trimarco, Atty Escrow Mngt Account for [Co-Conspirator #1]" (the "Co-Conspirator #1 Escrow Account"); (b) a bank account entitled "Law Offices of Vincent J. Trimarco, Jr. P.C., Attorney Escrow Mngt Account" (the "Trimarco Attorney Escrow Management Account"); (c) a bank account in TRIMARCO's name (the "Trimarco Personal Bank Account"); (d) a bank account for the GSDC (the "GSDC Bank Account"); (e) a bank account for South Shore Catering (the "South Shore Catering Bank Account"); and (f) a bank account for FoFo's (the "FoFo's Bank Account"). TRIMARCO and Co-Conspirator #1 used these various bank accounts to conceal the true identity of the purchaser and seller of the investments purchased with the Settlement Funds.

14. Indeed, in effectuating the purchase of various investments using the Settlement Funds and then, ultimately, the sale of these investments, the Settlement Funds and proceeds therefrom were transferred electronically through several accounts, including the Co-Conspirator #1 Escrow Account, the Trimarco Attorney Escrow Management

Account, the Trimarco Personal Bank Account and the GSDC Bank Account. Often these transfers all occurred on the same day.

15. Despite the Surrogate's Court Orders in April 2012 and August 2012, as well as a June 2012 Stipulation signed by all parties to the Surrogate's Court's Proceeding, enjoining Co-Conspirator #1 and his agents from "accessing, assigning, removing, or otherwise transferring or reducing" the Settlement Funds, the defendant VINCENT J. TRIMARCO, JR., and Co-Conspirator #1 transferred ownership and dissipated the Settlement Funds and proceeds therefrom to their own use. The funds from this sale of the investments purchased with the Settlement Funds were not distributed to Individual #2.

16. For example, on or about October 17, 2012, following the Surrogate's Court's August 8, 2012 decision, which ordered the refund of the settlement funds and enjoined further transfer of the funds, the defendant VINCENT J. TRIMARCO, JR., through a law firm in Montana (the "Montana Law Firm"), submitted Articles of Organization to the Montana Secretary of State to incorporate the GSDLLC in the State of Montana. On or about October 22, 2012, TRIMARCO, through the Montana Law Firm, submitted an application, via interstate postal carrier, for a certificate of title for the Ferrari on behalf of the GSDLLC. Records from the Montana Department of Motor Vehicle Division reflect that the Ferrari was registered to the GSDLLC on October 24, 2012.

17. On or about October 24, 2012, the same day the title was registered in the name of GSDLLC, the Ferrari was sold back to the auto dealer from which it was originally purchased for $150,000. The $150,000 received from the sale of the Ferrari was transferred, by means of interstate wire, from the auto dealer's bank account to the GSDC Bank Account.

18. In further violation of the Surrogate's Court's August 8, 2012 Order, the following withdrawals were made from the GSDC Bank Account after the Ferrari sale proceeds were deposited into same: (1) on October 24, 2012, $60,000 was transferred to a corporation, an entity the identity of which is known to the Grand Jury ("Corporation #1"); (2) on October 26, 2012, a $1,823.10 point of sale charge was paid to the Montana Law Firm; (3) on November 2, 2012, $15,000 was transferred to a business owned by a relative of the defendant VINCENT J. TRIMARCO, JR.; and (4) on November 14, 2012, $25,000 was transferred to a business in Las Vegas, Nevada to purchase equity securities on behalf of a relative of TRIMARCO.

19. In addition, automobile repair records from 2012 and 2013 indicate that the Jaguar was serviced for a variety of issues and registration records indicate that the GSDC registered the Jaguar with the New York State Department of Motor Vehicles through October 2015. These repairs and registration occurred after the Surrogate's Court's August 8, 2012 decision, which ordered the return of all Settlement Funds and enjoined further use and transfer of those funds. The defendant VINCENT J. TRIMARCO, JR., and Co-Conspirator #1 failed to comply with the Surrogate's Court order and deprived Individual #2 of settlement money proceeds.

20. The Surrogate's Court Proceeding is still pending and, to date, Individual #2 has been deprived of all of the Settlement Funds and proceeds therefrom.

III. <u>Additional Theft of Settlement Funds by TRIMARCO</u>

21. The defendant VINCENT J. TRIMARCO, JR., also engaged in a scheme to defraud Co-Conspirator #1 of the Settlement Funds. For example, when TRIMARCO sold certain assets and investments in contravention of the Surrogate Court's

orders, he fraudulently kept the proceeds of those sales for himself rather than sharing them with Co-Conspirator #1. TRIMARCO also fraudulently converted ownership of shares in the Emporium from Co-Conspirator #1 to TRIMARCO. By June 2012, Co-Conspirator #1 did not have any ownership share in the Emporium, despite having invested over $800,000 in Settlement Funds in the Emporium, whereas TRIMARCO had a majority interest in the Emporium, despite having contributed a nominal amount.

## COUNT ONE
(Mail and Wire Fraud Conspiracy)

22. The allegations contained in paragraphs one through 20 are realleged and incorporated as if fully set forth in this paragraph.

23. In or about and between October 2011 and August 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT J. TRIMARCO, JR., together with others, did knowingly and intentionally conspire to:

(a) devise a scheme and artifice to defraud Individual #2, and to obtain money and property from Individual #2 by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, cause mail matter to be delivered by mail and private and commercial interstate carriers, according to the directions thereon, contrary to Title 18, United States Code, Section 1341; and

(b) devise a scheme and artifice to defraud Individual #2, and to obtain money and property from Individual #2 by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and

artifice, transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Mail Fraud)

24. The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

25. In or about and between October 2012 and the date of this Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT J. TRIMARCO, JR., together with others, did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud Co-Conspirator #1 and Individual #2, and to obtain money and property from Co-Conspirator #1 and Individual #2 by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme to defraud, and attempting to do so, TRIMARCO did knowingly and intentionally cause matters and things to be delivered by mail and private and commercial interstate carrier according to the directions thereon, to wit: a December 17, 2012 mailing of the title of the Ferrari, in the name of GSDLLC, from the Montana Law Firm to an individual in Kentucky.

(Title 18, United States Code, Sections 1341, 2 and 3551 et seq.)

## COUNTS THREE THROUGH SEVEN
(Wire Fraud)

26. The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

27. In or about and between October 2012 and the date of this Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT J. TRIMARCO, JR., together with others, did knowingly and intentionally devise a scheme and artifice to defraud to Co-Conspirator #1 and Individual #2, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises.

28. On or about the approximate dates specified below, for the purpose of executing such scheme and artifice, the defendant VINCENT J. TRIMARCO, JR., together with others, transmitted and caused to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds as described below:

| Count | Approximate Date of Wire Transmission | Description of Wire Transmission |
| --- | --- | --- |
| THREE | October 24, 2012 | Wire transfer of $150,000 received from the sale of the Ferrari from the auto dealer's bank account to the GSDC Bank Account. |
| FOUR | October 24, 2012 | Wire transfer of $60,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to Corporation #1 |
| FIVE | October 26, 2012 | Wire transfer of $1,823.10 from the proceeds of the sale of the Ferrari to the Montana Law Firm |
| SIX | November 2, 2012 | Wire transfer of $15,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to a business owned by a relative of TRIMARCO |

| Count | Approximate Date of Wire Transmission | Description of Wire Transmission |
|---|---|---|
| SEVEN | November 14, 2012 | Wire transfer of $25,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to a business in Las Vegas, Nevada to purchase equity securities on behalf of a relative of TRIMARCO |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT EIGHT
(Money Laundering Conspiracy)

29. The allegations contained in paragraphs one through 20 are realleged and incorporated as if fully set forth in this paragraph.

30. In or about and between October 2011 and August 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT J. TRIMARCO, JR., together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate commerce, to wit: wire transfers of money, change of title of luxury vehicles, and change of ownership of property, which transactions in fact involved the proceeds of specified unlawful activity, to wit: mail and wire fraud and conspiracy to commit mail and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343 and 1349, respectively, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the

proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(1).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

COUNTS NINE THROUGH TWELVE
(Money Laundering – Unlawful Monetary Transactions)

31. The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

32. On or about the dates listed below, within the Eastern District of New York and elsewhere, the defendant VINCENT J. TRIMARCO, JR., together with others, did knowingly and intentionally engage and attempt to engage in monetary transactions, to wit: the title transfers and wire transactions set forth below, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: mail and wire fraud and conspiracy to commit mail and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343 and 1349, respectively, knowing that the property involved in such monetary transactions represented the proceeds of some form of unlawful activity:

| Count | Approximate Date of Transaction | Description of Transaction |
|---|---|---|
| NINE | October 24, 2012 | Wire transfer of $150,000 received from the sale of the Ferrari from the auto dealer's bank account to the GSDC Bank Account. |
| TEN | October 24, 2012 | Wire transfer of $60,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to Corporation #1 |
| ELEVEN | November 2, 2012 | Wire transfer of $15,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to a business owned by a relative of TRIMARCO |

| Count | Approximate Date of Transaction | Description of Transaction |
|---|---|---|
| TWELVE | November 14, 2012 | Wire transfer of $25,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to a business in Las Vegas, Nevada to purchase equity securities on behalf of a relative of TRIMARCO |

(Title 18, United States Code, Sections 1957(a), 2 and 3551 et seq.)

## COUNTS THIRTEEN THROUGH NINETEEN
(Money Laundering)

33. The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

34. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant VINCENT J. TRIMARCO, JR., together with others, did knowingly and intentionally conduct and attempt to conduct one or more financial transactions affecting interstate commerce, which financial transactions involved the proceeds of specified unlawful activity, to wit: mail and wire fraud and conspiracy to commit mail and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343 and 1349, respectively, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity and knowing that such transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, as set forth below:

14

| Count | Approximate Date of Transaction | Description of Transaction |
|---|---|---|
| THIRTEEN | October 24, 2012 | Transfer of title of Ferrari from GSDC to GSDLLC |
| FOURTEEN | October 24, 2012 | Transfer of title of Ferrari from GSDLLC to the auto dealer |
| FIFTEEN | October 24, 2012 | Wire transfer of $150,000 received from the sale of the Ferrari from the auto dealer's bank account to the GSDC Bank Account. |
| SIXTEEN | October 24, 2012 | Wire transfer of $60,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to Corporation #1 |
| SEVENTEEN | October 26, 2012 | Wire transfer of $1,823.10 from the proceeds of the sale of the Ferrari to the Montana Law Firm |
| EIGHTEEN | November 2, 2012 | Wire transfer of $15,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to a business owned by a relative of TRIMARCO |
| NINETEEN | November 14, 2012 | Wire transfer of $25,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to a business in Las Vegas, Nevada to purchase equity securities on behalf of a relative of TRIMARCO |

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE THROUGH SEVEN

35. The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts One through Seven, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

36. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      (a) cannot be located upon the exercise of due diligence;

      (b) has been transferred or sold to, or deposited with, a third party;

      (c) has been placed beyond the jurisdiction of the court;

      (d) has been substantially diminished in value; or

      (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS EIGHT THROUGH NINETEEN

37. The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts Eight through Nineteen, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

38. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

16

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
BRIDGET M. ROHDE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. # 2017R00578
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

*VINCENT J. TRIMARCO, JR.,*

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 2, 981(a)(1)(C), 982(a)(1), 982(b)(1), 1341, 1343, 1349, 1956(a)(1)(B)(i), 1956(h), 1957(a) and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
Foreperson

*Filed in open court this* _____ *day,*

*of* _____ A.D. 20 _____

_____
Clerk

Bail, $ _____

*Raymond A. Tierney and Catherine M. Mirabile*
*Assistant U.S. Attorneys*