CCC:CMM/MJB
F. #2017R00578

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D N.Y.

★   FEB 06 2020   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

VINCENT J. TRIMARCO, JR.,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>17-583 (S-1) (JMA)</u>
(T. 18, U.S.C., §§ 981(a)(1)(C),
982(a)(1), 982(b)(1), 1341, 1343, 1349,
1956(a)(1)(B)(i), 1956(h), 1957(a),
2 and 3551 <u>et seq.</u>; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

    At all times relevant to this Superseding Indictment, unless otherwise indicated:

<u>The Defendant</u>

    1.    The defendant VINCENT J. TRIMARCO, JR., was a practicing attorney, who maintained a law office in Smithtown, New York (the "Trimarco Law Firm").

<u>Relevant Individuals</u>

    2.    Individual #1, an individual whose identity is known to the Grand Jury, resided in Suffolk County, New York.   From at least October 2011 until Individual #1's death in August 2017, the defendant VINCENT J. TRIMARCO, JR. managed Individual #1's finances and paid most, if not all, of Individual #1's bills.

    3.    Individual #2, an individual whose identity is known to the Grand Jury, was Individual #1's child.

4.      Individual #3, an individual whose identity is known to the Grand Jury, was Individual #2's child and Individual #1's grandchild.

The Defendant's Fraud Scheme

I.      The Surrogate's Court Proceeding and the Federal Wrongful Death Action

5.      In or about June 2005, Individual #2 died while in the custody of the Suffolk County Sheriff's Office.   When Individual #2 died, he did not have a will and therefore an estate proceeding was subsequently commenced in Suffolk County Surrogate's Court (the "Surrogate's Court Proceeding") to resolve how the assets of Individual #2 would be distributed.   In or about May 2007, Individual #1 was named the administrator of Individual #2's estate.   As the administrator, Individual #1 was responsible for, among other duties, distributing the assets of Individual #2's estate according to the law that governs distribution of assets when an individual died intestate, or without a will.

6.      A separate wrongful death action was commenced on behalf of Individual #2 in the United States District Court for the Eastern District of New York (the "Federal Wrongful Death Action").   In or about July 2007, the Federal Wrongful Death Action was amended to reflect Individual #1 as the administrator of Individual #2's estate.   On or about September 22, 2011, the parties resolved the Federal Wrongful Death Action, as part of which the plaintiff was awarded $3,000,000.   As a result of the settlement, in or about October 2011, Individual #1's attorney of record in the Federal Wrongful Death Action and TRIMARCO received $1,000,000 in legal fees and a check for the remaining $2,000,000 was made payable to Individual #1 (the "Settlement Funds").

7.      In or about April 2012, a petition was filed with the Suffolk County Surrogate's Court on behalf of Individual #3 seeking status as the rightful heir and sole

distributee in regard to the distribution of funds from Individual #2's estate.   The Surrogate's Court enjoined Individual #1 and his agents from "accessing, secreting, dissipating, disposing, encumbering, assigning, removing, or otherwise transferring or reducing" the Settlement Funds.

8.      On or about June 5, 2012, a stipulation was signed restraining Individual #1 and his agents from "secreting, dissipating, disposing, encumbering, assigning, removing, pledging, or otherwise transferring . . . the proceeds of the wrongful death settlement[,]" including identified assets previously purchased with the Settlement Funds, without further order of the Surrogate's Court.   The stipulation was signed by the parties to the case and the Surrogate's Court Judge.

9.      On or about August 8, 2012, the Surrogate's Court determined that Individual #3 was the sole heir and distributee of Individual #2's estate.   As such, the Surrogate's Court issued an Order that directed Individual #1 to refund the $2,000,000 in Settlement Funds that was previously distributed to Individual #1 and again enjoined Individual #1 and his agents from, among other things, "accessing, assigning, removing, or otherwise transferring or reducing" the Settlement Funds.   On August 20, 2012, the Surrogate's Court August 8, 2012 Order was delivered to the Trimarco Law Firm.

10.      In or about and between October 2011 and October 2017, the defendant VINCENT J. TRIMARCO, JR., together with others, orchestrated a scheme to defraud the beneficiary or beneficiaries of Individual #2's estate, including the Settlement Funds and the proceeds therefrom.   During, and as part of, that scheme, from approximately April 2012 to August 2017, TRIMARCO and Individual #1, together with others, conspired to defraud

Individual #3, the rightful heir of Individual #2's estate, of the Settlement Funds and the proceeds therefrom.

## II.     The Theft of Settlement Funds by TRIMARCO

11.     Specifically, the defendant VINCENT J. TRIMARCO, JR., at times together with Individual #1, used the Settlement Funds to purchase and sell various investments, including but not limited to several properties, luxury vehicles and shares in the Emporium, a nightclub and music venue in Patchogue, New York, and kept the Settlement Funds and proceeds therefrom from Individual #3, the rightful heir and sole distributee of Individual #2's estate.   For example, using the Settlement Funds, TRIMARCO and Individual #1 purchased, among other things: (a) a 2007 Jaguar XKR convertible (the "Jaguar") for $57,000; (b) a 2007 Ferrari F430 Spider (the "Ferrari") for $200,000; (c) real property in Ronkonkoma, New York for $150,000; (d) real property in Nesconset, New York for $101,000; and (e) real property in Hauppauge, New York for $385,000.   In addition, approximately $800,000 of the Settlement Funds was used to invest in the Emporium.   The sale of these "investments" largely benefited TRIMARCO and none of the proceeds were distributed to Individual #3, the rightful heir and sole distributee of Individual #2's estate.

12.     The defendant VINCENT J. TRIMARCO, JR. and Individual #1 established various corporations and used previously established businesses in order to purchase and sell these investments, including but not limited to the following businesses: (a) the Gavin Scott Development Corporation ("GSDC"), a domestic business corporation formed in New York State; (b) South Shore Catering & Events, Inc., doing business as the Emporium ("South Shore Catering"), a domestic business corporation formed in New York State to operate the Emporium; (c) FoFo's Toy Inc., doing business as the Emporium, a

domestic business corporation formed in New York State ("FoFo's") and used to operate the Emporium; and (d) the Gavin Scott Development LLC ("GSDLLC"), a business incorporated in the State of Montana. TRIMARCO and Individual #1 used these various businesses to conceal the true identity of the purchaser and seller of the investments purchased with the Settlement Funds.

        13.    In addition, the defendant VINCENT J. TRIMARCO, JR. used various bank accounts in furtherance of the fraud scheme, including but not limited to the following accounts: (a) a bank account entitled the "Law Offices of Vincent J. Trimarco, Atty Escrow Mngt Account for [Individual #1]" (the "Individual #1 Escrow Account"); (b) a bank account entitled "Law Offices of Vincent J. Trimarco, Jr. P.C., Attorney Escrow Mngt Account" (the "Trimarco Attorney Escrow Management Account"); (c) a bank account in TRIMARCO's name (the "Trimarco Personal Bank Account"); (d) a bank account for the GSDC (the "GSDC Bank Account"); (e) a bank account for South Shore Catering (the "South Shore Catering Bank Account"); and (f) a bank account for FoFo's (the "FoFo's Bank Account"). TRIMARCO used these various bank accounts to conceal the true identity of the purchaser and seller of the investments purchased with the Settlement Funds.

        14.    Indeed, in effectuating the purchase of various investments using the Settlement Funds and then, ultimately, the sale of these investments, the Settlement Funds and proceeds therefrom were transferred electronically through several accounts, including the Individual #1 Escrow Account, the Trimarco Attorney Escrow Management Account, the Trimarco Personal Bank Account and the GSDC Bank Account. Often these transfers all occurred on the same day.

15.     Despite the Surrogate's Court Orders in April 2012 and August 2012, as well as a June 2012 Stipulation signed by all parties to the Surrogate's Court's Proceeding, enjoining Individual #1 and his agents from "accessing, assigning, removing, or otherwise transferring or reducing" the Settlement Funds, the defendant VINCENT J. TRIMARCO, JR., and, at times, Individual #1, transferred ownership and dissipated the Settlement Funds and proceeds therefrom to their own use.   The funds from the sale of the investments purchased with the Settlement Funds were not distributed to Individual #3.

16.     For example, on or about October 17, 2012, following the Surrogate's Court's August 8, 2012 decision, which ordered the refund of the Settlement Funds and enjoined further transfer of the funds, the defendant VINCENT J. TRIMARCO, JR., through a law firm in Montana (the "Montana Law Firm"), submitted Articles of Organization to the Montana Secretary of State to incorporate the GSDLLC in the State of Montana.   On or about October 22, 2012, TRIMARCO, through the Montana Law Firm, submitted an application, via interstate postal carrier, for a certificate of title for the Ferrari on behalf of the GSDLLC.   Records from the Montana Department of Motor Vehicle Division reflect that the Ferrari was registered to the GSDLLC on October 24, 2012.

17.     On or about October 24, 2012, the same day the title was registered in the name of GSDLLC, the Ferrari was sold back to the auto dealer from which it was originally purchased for $150,000.   The $150,000 received from the sale of the Ferrari was transferred, by means of interstate wire, from the auto dealer's bank account to the GSDC Bank Account.

18.     In further violation of the Surrogate's Court's August 8, 2012 Order, the following withdrawals were made from the GSDC Bank Account after the Ferrari sale

proceeds were deposited into same: (1) on October 24, 2012, $60,000 was transferred to a corporation, an entity the identity of which is known to the Grand Jury ("Corporation #1"); (2) on October 26, 2012, a $1,823.10 point of sale charge was paid to the Montana Law Firm; (3) on November 2, 2012, $15,000 was transferred to a business owned by a relative of the defendant VINCENT J. TRIMARCO, JR.; and (4) on November 14, 2012, $25,000 was transferred to a business in Las Vegas, Nevada to purchase equity securities on behalf of a relative of TRIMARCO.

19.     In addition, automobile repair records from 2012 and 2013 indicate that the Jaguar was serviced for a variety of issues and registration records indicate that the GSDC registered the Jaguar with the New York State Department of Motor Vehicles through October 2015.   These repairs and registration occurred after the Surrogate's Court's August 8, 2012 decision, which ordered the return of all Settlement Funds and enjoined further use and transfer of those funds.   The defendant VINCENT J. TRIMARCO, JR. and Individual #1 failed to comply with the Surrogate's Court order and deprived Individual #3 of Settlement Funds and proceeds therefrom.

20.     The Surrogate's Court Proceeding is still pending and, to date, Individual #3 has been deprived of all of the Settlement Funds and proceeds therefrom.

III.     Additional Theft of Settlement Funds by TRIMARCO

21.     The defendant VINCENT J. TRIMARCO, JR. also engaged in a scheme to defraud Individual #1 of the Settlement Funds.   For example, when TRIMARCO sold certain assets and investments in contravention of the Surrogate's Court's orders, he fraudulently kept the proceeds of those sales for himself rather than sharing them with Individual #1.   TRIMARCO also fraudulently converted ownership of shares in the

Emporium from Individual #1 to TRIMARCO.   By June 2012, Individual #1 did not have any ownership share in the Emporium, despite having invested over $800,000 in Settlement Funds in the Emporium, whereas TRIMARCO had a majority interest in the Emporium, despite having contributed a nominal amount.

COUNT ONE<br>(Mail and Wire Fraud Conspiracy)

22.    The allegations contained in paragraphs one through 20 are realleged and incorporated as if fully set forth in this paragraph.

23.    In or about and between April 2012 and August 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT J. TRIMARCO, JR., together with others, did knowingly and intentionally conspire to:

(a)    devise a scheme and artifice to defraud Individual #3, and to obtain money and property from Individual #3 by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, cause mail matter to be delivered by mail and private and commercial interstate carriers, according to the directions thereon, contrary to Title 18, United States Code, Section 1341; and

(b)    devise a scheme and artifice to defraud Individual #3, and to obtain money and property from Individual #3 by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, transmit and cause to be transmitted, by means of wire communication in interstate

and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT TWO
(Mail Fraud)

24.     The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

25.     On or about December 17, 2012, within the District of Montana and the Western District of Kentucky, the defendant VINCENT J. TRIMARCO, JR., together with others, did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud one or more beneficiaries of Individual #2's estate, and to obtain money and property from the beneficiaries of Individual #2's estate by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme to defraud, and attempting to do so, TRIMARCO did knowingly and intentionally cause matters and things to be delivered by mail and private and commercial interstate carrier according to the directions thereon, to wit: a mailing of the title of the Ferrari, in the name of GSDLLC, from the Montana Law Firm to an individual in Kentucky.

(Title 18, United States Code, Sections 1341, 2 and 3551 et seq.)

### COUNTS THREE THROUGH SEVEN
(Wire Fraud)

26.     The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

27.     On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant VINCENT J. TRIMARCO, JR., together with

others, did knowingly and intentionally devise a scheme and artifice to defraud one or more

beneficiaries of Individual #2's estate, and to obtain money and property from them by

means of materially false and fraudulent pretenses, representations and promises, and for the

purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by

means of wire communication in interstate commerce, writings, signs, signals, pictures and

sounds as described below:

| Count | Approximate Date of Wire Transmission | Description of Wire Transmission |
|---|---|---|
| THREE | October 24, 2012 | Wire transfer of $150,000 received from the sale of the Ferrari from the auto dealer's bank account to the GSDC Bank Account. |
| FOUR | October 24, 2012 | Wire transfer of $60,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to Corporation #1 |
| FIVE | October 26, 2012 | Wire transfer of $1,823.10 from the proceeds of the sale of the Ferrari to the Montana Law Firm |
| SIX | November 2, 2012 | Wire transfer of $15,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to a business owned by a relative of TRIMARCO |
| SEVEN | November 14, 2012 | Wire transfer of $25,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to a business in Las Vegas, Nevada to purchase equity securities on behalf of a relative of TRIMARCO |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT EIGHT
(Money Laundering Conspiracy)

28.    The allegations contained in paragraphs one through 20 are realleged

and incorporated as if fully set forth in this paragraph.

29.     In or about and between April 2012 and August 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT J. TRIMARCO, JR., together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate commerce, to wit: wire transfers of money, change of title of luxury vehicles, and change of ownership of property, which transactions in fact involved the proceeds of specified unlawful activity, to wit: mail and wire fraud and conspiracy to commit mail and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343 and 1349, respectively, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

COUNTS NINE THROUGH TWELVE
(Money Laundering – Unlawful Monetary Transactions)

30.     The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

31.     On or about the dates listed below, within the Eastern District of New York and elsewhere, the defendant VINCENT J. TRIMARCO, JR., together with others, did knowingly and intentionally engage and attempt to engage in monetary transactions, to wit: the title transfers and wire transactions set forth below, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000 and that was derived

from specified unlawful activity, to wit: mail and wire fraud and conspiracy to commit mail

and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343 and 1349,

respectively, knowing that the property involved in such monetary transactions represented

the proceeds of some form of unlawful activity:

| Count | Approximate Date of Transaction | Description of Transaction |
|-------|--------------------------------|----------------------------|
| NINE | October 24, 2012 | Wire transfer of $150,000 received from the sale of the Ferrari from the auto dealer's bank account to the GSDC Bank Account. |
| TEN | October 24, 2012 | Wire transfer of $60,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to Corporation #1 |
| ELEVEN | November 2, 2012 | Wire transfer of $15,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to a business owned by a relative of TRIMARCO |
| TWELVE | November 14, 2012 | Wire transfer of $25,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to a business in Las Vegas, Nevada to purchase equity securities on behalf of a relative of TRIMARCO |

(Title 18, United States Code, Sections 1957(a), 2 and 3551 et seq.)

COUNTS THIRTEEN THROUGH SEVENTEEN
(Money Laundering)

32.     The allegations contained in paragraphs one through 21 are realleged

and incorporated as if fully set forth in this paragraph.

33.     On or about the dates set forth below, within the Eastern District of

New York and elsewhere, the defendant VINCENT J. TRIMARCO, JR., together with

others, did knowingly and intentionally conduct and attempt to conduct one or more financial

transactions affecting interstate commerce, which financial transactions involved the

proceeds of specified unlawful activity, to wit: mail and wire fraud and conspiracy to commit mail and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343 and 1349, respectively, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity and knowing that such transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, as set forth below:

| Count | Approximate Date of Transaction | Description of Transaction |
|---|---|---|
| THIRTEEN | October 24, 2012 | Wire transfer of $150,000 received from the sale of the Ferrari from the auto dealer's bank account to the GSDC Bank Account. |
| FOURTEEN | October 24, 2012 | Wire transfer of $60,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to Corporation #1 |
| FIFTEEN | October 26, 2012 | Wire transfer of $1,823.10 from the proceeds of the sale of the Ferrari to the Montana Law Firm |
| SIXTEEN | November 2, 2012 | Wire transfer of $15,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to a business owned by a relative of TRIMARCO |
| SEVENTEEN | November 14, 2012 | Wire transfer of $25,000 from the proceeds of the sale of the Ferrari from the GSDC Bank Account to a business in Las Vegas, Nevada to purchase equity securities on behalf of a relative of TRIMARCO |

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE THROUGH SEVEN

34.    The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts One through Seven, the government will

seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and

Title 28, United States Code, Section 2461(c), which require any person convicted of such

offenses to forfeit any property, real or personal, constituting or derived from proceeds

obtained directly or indirectly as a result of such offenses.

      35.    If any of the above-described forfeitable property, as a result of any act

or omission of the defendant:

          (a)    cannot be located upon the exercise of due diligence;

          (b)    has been transferred or sold to, or deposited with, a third party;

          (c)    has been placed beyond the jurisdiction of the court;

          (d)    has been substantially diminished in value; or

          (e)    has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendant up to the value of the forfeitable

property described in this forfeiture allegation.

      (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States

Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS EIGHT THROUGH SEVENTEEN

      36.    The United States hereby gives notice to the defendant that, upon his

conviction of any of the offenses charged in Counts Eight through Seventeen, the

government will seek forfeiture in accordance with Title 18, United States Code, Section

982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

37.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

F. # 2017R00578

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*VINCENT J. TRIMARCO, JR.,*

Defendant.

# SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(b)(1), 1341, 1343,
1349, 1956(a)(1)(B)(i), 1956(h), 1957(a), 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day.*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

**Catherine M. Mirabile and Michael J. Bushwack**
**Assistant U.S. Attorneys**