# EDELSTEIN & GROSSMAN

Attorneys at Law
501 Fifth Avenue, Suite 514
New York, NY 10007
Tel: (212) 871-0571
Fax: (212) 922-2906
jonathan.edelstein.2@gmail.com

_____

April 14, 2020

**VIA ELECTRONIC CASE FILING**
Hon. Joan M. Azrack
United States District Court
Eastern District of New York
924 Federal Plaza
Central Islip, NY 11722

**Re: United States v. Trimarco, Docket No. 17-CR-583 (S-1) (JMA)**

Your Honor:

The undersigned, attorneys for defendant Vincent Trimarco, respectfully write in response to the government's letter submission of April 9, 2020 (Doc. 109) and in further support of defendant's motion to dismiss and/or to require the government to proceed only as to the alleged scheme to defraud Rebecca Schaeffer.

The government's response fails to grapple with the logical and legal impossibility of the allegations in the superseding indictment. Not only does the S-1 indictment "allege that [Gary Eriksen] was both a victim and a co-conspirator in the same scheme" (Doc. 109 at 1), but it alleges that a scheme *against* Mr. Eriksen seamlessly turned into a conspiracy *with* him against a third party – and that even after Mr. Eriksen allegedly made an alliance with defendant Trimarco, he continued to be a victim. And not only that, but the scheme against Mr. Eriksen allegedly continued even after the issuance of a judicial declaration that the property in question was not his. An allegation that Mr. Trimarco engaged in a scheme "to defraud the beneficiary or beneficiaries of [Scott Eriksen's] estate" (Doc. 90, ¶ 10), however artfully phrased, simply cannot encompass such logical contortions.

To begin with, contrary to the government's contention, the original indictment *did not* charge a single scheme. As discussed in defendant's prior submissions, the indictment alleged a scheme to defraud Rebecca Schaefer under the heading "The Theft of Settlement Funds by TRIMARCO and [Gary Eriksen]" (Doc. 1, ¶¶ 11-20) and then, under the separate heading "Additional Theft of Settlement Funds by TRIMARCO," alleged that "[t]he defendant VINCENT

3

J. TRIMARCO JR. *also* engaged in a scheme to defraud [Mr. Eriksen] of the Settlement Funds" (id., ¶ 21) (emphasis added).  If there were in fact a single scheme alleged in the original indictment, there would have been no need to use the word "also."

The government also disputes defendant's reading of United States v. Reifler, 446 F.3d 65 (2d Cir. 2006) and United States v. Lazarenko, 624 F.3d 1247 (9th Cir. 2010).  In the government's opinion, Reifler and Lazarenko held that "co-conspirator" and "victim" are mutually exclusive categories only for purposes of restitution, not for purposes of criminal liability.  (Doc. 109 at 2).  It is true that both the Reifler and Lazarenko cases were decided in the context of restitution.  However, the issues of restitution and criminal liability cannot be separated, because in fraud cases, restitution is mandatory.  If Mr. Trimarco is convicted of a scheme to defraud *inter alia* Gary Eriksen, then Mr. Eriksen's estate will be entitled to mandatory restitution, which will place this Court in exactly the position forbidden by Reifler and Lazarenko, i.e., determining the share of ill-gotten gains to which Gary Eriksen's estate is entitled.[1]  Moreover, in neither Reifler nor Lazarenko was the defendant actually charged with a single scheme in which the same person was both an alleged victim and an alleged co-participant,[2] and therefore, the decisions in those cases certainly cannot be said to support the government's claim that simultaneous victim and co-conspirator status is possible.

But even if it is theoretically possible for Mr. Eriksen to be a participant and victim of the same scheme at the same time – which it is not – such possibility does not exist as to the *particular* scheme alleged in this case.  Once again, the S-1 indictment posits a "scheme" in which Mr. Eriksen started out as the only target, and then switched sides seamlessly to become a perpetrator. The government does not cite now, and has never cited in any of its submissions, any case in which a victim of a scheme – much less the sole initial victim – can become a perpetrator but the scheme still remains the same.

---

[1] Nor would this be a theoretical exercise, given that Gary Eriksen had two sons who would be joint heirs.  Part of any funds awarded to his estate would go to Rebecca Schaeffer as sole distribute of Scott Eriksen, but another part would go to Gary Eriksen Jr.  Thus, any future award of restitution to the Gary Eriksen estate would have the effect of reducing the restitution available to Rebecca Schaeffer.  The complications entailed by this situation are yet another reason why it would be untenable for the Court to characterize Mr. Eriksen as both conspirator and victim.

[2] In Lazarenko, the defendant, a former Prime Minister of Ukraine, was charged with extorting money from one Peter Kiritchenko, and was charged with a *separate* money-laundering scheme in which Kiritchenko was a co-participant.  See United States v. Lazarenko, 564 F.3d 1026, 1030-32 (9th Cir. 2009).  Likewise, Reifler was not charged with defrauding his co-conspirator, Laken; instead, the victims in the Reifler case were (i) union pension funds, and (ii) the investing public, via manipulation of stock prices.  See Reifler, 446 F.3d at 70-81.   This is a far cry from the situation at bar, where the government alleges that one person was simultaneously a participant and victim of the *same* scheme.

Nor do the government's opposition arguments reckon with the fact that, as of August 2012, there was a judicial declaration that all the disputed funds belonged to Rebecca Schaeffer and not to Gary Eriksen. The government cites no authority holding that there can be a scheme to defraud Mr. Eriksen of what was not his. Moreover, the government's theory of how Mr. Eriksen remained a victim after August 2012 – namely, that Mr. Trimarco allegedly double-crossed him and failed to give him his "proper" share of the ill-gotten gains – is an affront to the courts. To hold that a person can be charged with defrauding his co-conspirators by not dividing the spoils equitably would be to place the federal courts in the role of policing honor among thieves. The issue of whether "one or more conspirators may have cheated their comrades" is not the business of the United States courts. See Lazarenko, 624 F.3d at 1251; accord Morente v. Morente, 2000 WL 264329, *3 (Del. Chancery 2000) (the courts "do not enforce the code of honor among thieves"). It is thus not surprising that the government has failed to find a single case allowing criminal fraud charges on such a basis, and this Court should not be the first.

Hence, despite the government's efforts to paper over the logical impossibilities of this case by pleading a single scheme to defraud "one or more beneficiaries of [Scott Eriksen's] estate," the duplicity in the indictment remains. Since specific allegations in indictments take precedence over generalized ones, see United States v. Gabriel, 920 F. Supp. 498, 506 (S.D.N.Y. 1996), citing Papasan v. Allain, 478 U.S. 265, 283 (1986), a boilerplate allegation of a scheme to defraud "one or more beneficiaries" whoever they may be cannot overcome the detailed factual recitations that make clear that there were two separate schemes, one of which – the one against Gary Eriksen – perforce ended in August 2012. Therefore, this Court should find that the indictment is duplicitous, requiring that the government elect which scheme to go forward on – and that, since any possible scheme against Gary Eriksen ended more than five years prior to the original indictment, the only alleged scheme on which the government can elect to proceed is that against Rebecca Schaeffer.

Finally, contrary to the government's contention, an allegation of a scheme to defraud "one or more beneficiaries" of the Scott Eriksen estate does broaden the charges beyond what was alleged in the original indictment. The original indictment alleged two victims – Rebecca Schaefer (identified as Individual # 2) and Gary Eriksen (identified as Co-Conspirator # 1). The superseding indictment, in contrast, opens the door to other potential "beneficiaries" – meaning that, even if the specific transactions alleged are the same, the government is free to pursue additional theories of liability. Moreover, the government's opposition submission does not dispute plaintiff's showing that the original grand jury was misled as to material facts including the substance of relevant court orders. (Doc. 97 at 3). This Court should therefore find that any single scheme alleged in the superseding indictment does not relate back to the original indictment and that if the government seeks to go forward on any such scheme, it must accept a start date of February 2015. See generally United States v. Rutkoske, 506 F.3d 170, 175 (2d Cir. 2007).

The Court's consideration in this matter is appreciated.

3

        Respectfully submitted,

        /s/ Jonathan I. Edelstein

        Jonathan I. Edelstein

        /s/ Dennis J. Ring

        Dennis J. Ring
        Attorneys for Defendant

Cc:    All Counsel (Via ECF)