# Dennis J. Ring, Esq.
**Attorney at Law**
**148-29 Cross Island Parkway**
**Whitestone, New York 11357**
Tel (718) 357-1040
Fax (718) 357-4926
DennisRingLaw@Gmail.com

August 24, 2020

**VIA ELECTRONIC CASE FILING**
Hon. Joan M. Azrack
United States District Court
Eastern District of New York
924 Federal Plaza
Central Islip, NY 11722

        Re:    United States v. Vincent J. Trimarco, Jr.
                   Docket No. 17-CR-583 (JMA)

Dear Judge Azrack,

With the Court's permission we write to supplement the defendant's oral application to adjourn his trial, currently scheduled to begin on October 13, 2020.

Among the rights guaranteed to a criminal defendant by the Sixth Amendment are the rights to a public trial, with an impartial jury drawn from a fair cross section of the community, to confront witnesses testifying against them, to call favorable witnesses and have the assistance of legal counsel. U.S. Const. amend. VI. Given the realities of the COVID-19 pandemic, it is not possible at this time to conduct a trial while guaranteeing the defendant these rights. Accordingly, the defendant asks that his trial be adjourned to a time when it can be conducted in a manner that ensures these rights.

    A. Public Access Will Be Unfairly Limited

The Supreme Court of the United States has found that under both the First and Sixth Amendments, a criminal defendant has a right to a public trial. Press-Enter. Co. v. Superior Court of Calif., Riverside Cnty., 464 U.S. 501, 505 (1984); Waller v. Georgia, 467 U.S. 39, 46 (1984). The current plan for the resumption of jury trials in this district states that the courthouse will be open to the public. However, the reality is that access will be limited to members of the public willing to risk contracting a serious, possibly fatal, virus by appearing in person at the trial. For the members of the public most at risk, the elderly and/or those suffering from a pre-existing health condition, the risk is likely too great to attend a trial in a public courtroom at this time. This is particularly true with

respect to the defendant's father, Vincent J. Trimarco, Sr. Mr. Trimarco, Sr., a lawyer for over fifty years, has been involved with his son's case from the beginning. Mr. Trimarco, Sr. greatly wishes to attend his son's trial, both to support him and to provide additional counsel as an experienced attorney. Mr. Trimarco Sr. is 79 years of age and suffers from multiple pre-existing health conditions, including heart disease and diabetes. Simply put, Mr. Trimarco, Sr. is among the most vulnerable to COVID-19. If his son's trial were to proceed in October, Mr. Trimarco Sr. will have to choose between his health and attending the trial to support his son. We ask that he not be forced to make such a difficult decision.

### B. It Is Unlikely That The Pool of Potential Jurors Will Be a Fair Cross Section of the Community

Since the COVID-19 virus is particularly dangerous to older people and those with pre-existing health conditions it is only logical to expect that a large percentage of this class of people will not appear for jury duty, or if they do, they will ask to be excused for medical reasons. The courts that have addressed this novel issue have expressed concern over the composition of jury pools. For example, in U.S. v. Arumugam, the Court, in overruling the defendant's objection on speedy trial grounds to a trial continuance, found that due to the higher risk to certain people posed by COVID-19, "at this time, it would be difficult, if not impossible, to obtain a jury pool that would represent a fair cross section of the community." U.S. v. Arumugam, Case No. CR19-041RSL (W.D. Wash. 2020). Until the health risks to this large segment of the potential jury pool can be mitigated, the ability to obtain a jury pool comprising a fair cross section of the community is doubtful.

### C. Defense Counsel Cannot Provide Adequate Legal Assistance Under The Proposed Rules for the Resumption of Trials

Our understanding is that the plan for the resumption of jury trials in the Eastern District of New York requires that with the exception of testifying witnesses, all trial participants (defendants, attorneys and jurors) must wear face masks at all times. This results in a host of impediments for counsel in providing legal assistance to the defendant. Much of communication is nonverbal and the wearing of face masks dramatically limits nonverbal communication. The dramatic limitation of communication presented by masks severely limits the ability of an attorney to be an effective advocate for their client. The issues are present from the initial stages of a trial until the end.

The issues begin with the questioning of jurors during jury selection. With the potential jurors wearing face masks, jury selection will be effectively reduced to written responses. Without the ability to see the faces of jurors an attorney's ability to judge the credibility of potential jurors is greatly diminished. Likewise, much is often gleaned from the facial reactions of other jurors to the answers given by a juror being questioned. These nonverbal cues often carry great weight when attorneys are deciding whether to strike a potential juror. With the potential jurors wearing masks none of this will be possible.

The issue of nonverbal communication also arises during both opening statements and closing arguments. An attorney must be able to effectively communicate their points to a jury during their addresses to the jury. Since a large percentage of communication is nonverbal, a masked attorney's ability to communicate with a jury will thus be greatly limited. Trials are also dynamic and attorneys must adjust based upon the reaction of the jury to various points and arguments. During opening statements the reactions of jurors to a particular argument may cause a change in trial strategy to emphasize or deemphasize certain arguments during the ensuing trial. Likewise, closing arguments are often modified to spend more time discussing facts that support arguments the jurors appear to be more receptive to. None of this will be possible while staring at the masked faces of the jurors. Only by reading the faces of the jurors can this be done. Without the ability to read the faces of the jurors an attorney's effectiveness as an advocate is greatly handicapped.

Similarly, the direct examinations and cross-examinations of witnesses are often adjusted depending on the reactions of the jurors. During the questioning of witnesses, the only indication as to what jurors are thinking is their facial expressions. Of course without the ability to see the faces of the jurors, there is no way for a questioner to divine whether a particular line of questioning is productive or if the jurors are viewing it as a waste of their time.

In sum, the wearing of masks greatly limits communication between an attorney and jurors. The ability to read the faces of the jurors throughout trial is critical, from jury selection to summation. Without the ability to effectively communicate an advocate is left operating in the blind and cannot provide competent legal counsel during trial.

### D.  The Defendant's Ability To Prepare For Trial Will Be Impaired

Additionally, the defendant's ability to prepare for trial will be impaired as a result of reluctance of potential witnesses to speak with the defendant's attorneys and/or his investigator. This is not a case where all or the vast majority of witnesses are members of law enforcement who are not expected to speak to the defense prior to trial. To the contrary, in this case the vast majority of witnesses will not be members of law enforcement. In order to adequately prepare for trial the defense must speak to numerous civilian witnesses with knowledge of the critical issue in this trial – the relationship between the defendant and Gary Ericksen. The process of doing this was well under way when the COVID-19 pandemic emerged in March of 2020. At that time our ability to speak to these potential witnesses was forbidden by New York State's lockdown orders. Now that we are once again permitted to speak with potential witnesses, our ability to do so will likely be limited by the willingness of the potential witnesses to speak to strangers during the ongoing COVID-19 pandemic. Additionally, witnesses the defense wish to call to testify may be unwilling to appear in a public courtroom amid the ongoing health crises. This reluctance to appear will only be heightened if there is a surge in COVID-19 cases in the coming months as predicted by public health officials.

### E. Requiring a Defendant to Wear a Mask During The Trial Will Further Limit His Defense

The expected protocol for the resumption of trials in this district will require defendants to wear face masks throughout trial. Part of any successful trial strategy is to humanize a defendant to the jury. Our ability to do so will be greatly limited by having the defendant masked throughout the trial. The jury will never see the defendant's face or observe his reaction to evidence, both favorable and unfavorable. If the jury never sees the defendant's face they may fail to fully appreciate the great power and responsibility they have in deciding the fate of another human being.

Even more worrisome is the possibility that the jury may infer that a defendant required to sit through a trial while wearing a face mask must be particularly dangerous or loathsome. Historically, the wearing of masks has been perceived as dangerous or nefarious. For this reason many jurisdictions have laws limiting the wearing of face coverings in public. It cannot be assumed that a jury would cast aside such ingrained feelings and views of face masks because in the past six months face coverings have become commonplace. It is just as likely that the long held perceptions people have of masked individuals will result in the defendant being cast in a negative light.

Detailed above are issues that are foreseeable with holding a criminal jury trial during the current health crisis. Since no other jury trials have been conducted thus far, there are sure to be other issues not yet envisioned. However, based just upon the issues set forth above, the defendant's trial should be adjourned.

### F. There Is No Compelling Reason Why This Case Must Be Tried Now

The government has not put forth a compelling reason why this case should be tried now. The defendant is not charged with a violent crime, he has no prior criminal record and he is not incarcerated awaiting trial. The defendant has complied with all conditions of his pre-trial release. He does not present a danger to the community and he is not a flight risk. Nothing about the case itself or the defendant provide a compelling reason why the case must be tried now under the current conditions.

Additionally, the defendant is not responsible for delaying the case or his trial. The alleged underlying acts supporting the charges occurred by the end of 2012. Yet the government did not charge the defendant until late 2017, almost five years after the charged conduct. For a number of reasons, including the Government's extensively litigated motion to disqualify one of the defendant's prior attorneys, the case did not move forward for almost two years. As a result, the defendant's first trial date was not until February 2020. The current defense team was retained in October 2019. We abided by the February 2020 trial schedule by filing and litigating all the pre-trial motions. Recognizing issues with the initial Indictment, the government went back to the grand jury to obtain a Superseding Indictment on February 6, 2020. The defendant was arraigned on the Superseding Indictment on February 11, 2020. The February 2020 trial

date was then adjourned to June 1, 2020 because in the lead up to trial, the current prosecutorial team uncovered over 30,000 pages of discovery that had not been previously provided to the defense. The June 1, 2020 trial date was then administratively adjourned due to the COVID-19 pandemic. The defendant has done nothing to delay his trial and any suggestion otherwise is not supported by the history of the case.

The defendant wishes to have a trial under circumstances that will not limit his ability to defend himself. There is no indication that the planned rules for resuming trials during the COVID-19 pandemic will be the "new normal." It is more likely that in the near future we will be able to conduct trials without the limitations currently planned. The defendant asks that he be afforded the opportunity to have his trial at a time when it can be conducted in a manner that is as close to normal as possible. Accordingly, we ask that the defendant's October 13, 2020 trial be adjourned.

Respectfully submitted,

/s/ Dennis J. Ring
Dennis J. Ring

/s/ Jonathan I. Edelstein
Jonathan I. Edelstein

Attorneys for Defendant

Cc:     All Counsel (Via ECF)