UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA,

           -against-

VINCENT J. TRIMARCO JR.,

           Defendant.
------------------------------------------------------------------------X

For Online Publication Only

**ORDER**
17-CR-583 (JMA)

**FILED
CLERK**

9/1/2020 10:14 am

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**APPEARANCES:**

Seth D. DuCharme
   Acting United States Attorney
Catherine M. Mirable
Michael J. Bushwack
   Assistant United States Attorneys
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722
    *Attorneys for the United States*

Dennis J. Ring
148-29 Cross Island Parkway
Whitestone, New York 11357
    and
Jonathan I. Edelstein
501 5th Ave
Suite 514
New York, New York 10017
    *Attorneys for Defendant Vincent J. Trimarco Jr.*

**AZRACK, United States District Judge:**

President John Adams, a trial lawyer by profession, once described trial by jury as part of the "heart and lungs" of democracy.[1]  For the past several months, both the metaphorical and physical heart and lungs of our democracy have been threatened by the onset and continuation of the COVID-19 pandemic.  As of this writing, over 182,000 people in the United States have lost

---

[1] See Neil Gorsuch, A Republic, If You Can Keep It, 243 (2019).

their lives and 5.97 million have been infected with the disease.[2] Practically every aspect of society has been upended by this unprecedented public health emergency, including the work of this Court.

To mitigate the dangers posed by the virus, the Chief Judge of the Eastern District of New York has issued a series of Administrative Orders that have modified court operations.[3] Though the Eastern District's two courthouses have remained open for business throughout the pandemic, certain restrictions have been imposed, including the continuation of all jury trials since March. Over time, as the rates of transmissions, hospitalizations, and deaths caused by the disease have decreased throughout the counties of the Eastern District, the Court has eased several of its restrictions. Informed by best practices recommended by medical experts and public health officials, the Chief Judge has implemented new safety measures within the District's courthouses, such as mandating temperature checks and symptom screenings for all those entering the buildings and requiring anyone inside to wear masks and practice social distancing, among other protocols. Many in-person proceedings have now resumed, including the empaneling of a grand jury.

The restoration of court operations has coincided with reopenings throughout the rest of society. Businesses and services that were previously closed because they were deemed "nonessential" have now resumed operating, such as zoos, shopping malls, gyms, and bowling alleys.[4] At the same time that more and more of these "nonessential" entities reopen, defendant Vincent J. Trimarco Jr. ("Defendant") argues that one of the most essential services in our society—criminal jury trials—must not proceed.

---

[2] See Centers for Disease Control and Prevention, Cases in the U.S., available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us html (last visited Aug. 31, 2020).

[3] See Eastern District of New York, COVID-19 (Coronavirus) Information and Administrative Orders, available at https://www.nyed.uscourts.gov/covid-19.

[4] See Michael Gold and Matt Stevens, What Restrictions on Reopening Remain in New York?, N.Y. Times (Aug. 17, 2020), https://www nytimes.com/article/new-york-phase-reopening html.

Defendant has moved the Court to delay his October 13, 2020 trial indefinitely until some indeterminate time in the future—months and possibly even years away—when the trial "can be conducted in a manner that is as close to normal as possible." (ECF No. 114 at 5.) Defendant essentially argues that criminal jury trials must not proceed for the foreseeable future unless a defendant agrees to go to trial. A criminal defendant in this Court has many rights under the Constitution and federal law. As explained below, however, those rights do not include an ironclad veto that allows defendants to postpone their trials until some indeterminate point in the future because of the COVID-19 crisis. Other parties, including alleged victims, the government, the public, and the Court, also have weighty interests in preventing the wheels of justice from grinding to an indefinite halt based on a defendant's say-so. For the reasons that follow, Defendant's motion for an adjournment is denied. The trial will proceed as scheduled on October 13, 2020.

## I.     BACKGROUND

On October 24, 2017, Defendant was charged in a nineteen-count indictment with conspiracy to commit mail and wire fraud, and related substantive counts, in violation of 18 U.S.C. §§ 1341, 1343, and 1349, and money laundering conspiracy, and related substantive counts, in violation of 18 U.S.C. §§ 1956 and 1957. (ECF No. 1.) Earlier this year, a grand jury returned a superseding indictment that clarified the factual circumstances alleged in the prior indictment and charged Defendant with seventeen counts under the same statutes. (ECF No. 90.) Both indictments accuse Defendant of orchestrating a scheme in which he purportedly defrauded the beneficiaries of a decedent's estate of settlement funds obtained from a wrongful death proceeding. This scheme is alleged to have taken place between October 2011 and October 2017.

In the nearly three years that have passed since the original indictment was lodged, the parties have engaged in extensive motion practice—including motions to dismiss the indictment

and superseding indictment, a motion and writ of mandamus regarding the disqualification of Defendant's counsel, motions to compel, and motions in limine—that has necessitated several adjournments of the trial date, most recently to October 13, 2020.  On August 19, 2020, the parties participated in a status conference in advance of trial.  During that conference, Defendant made an oral motion to adjourn the trial, citing concerns related to the pandemic.  The Court reserved decision and permitted the parties to submit supplemental briefing.  (ECF Nos. 113, 114.)  Having considered the parties' oral argument and written positions regarding an adjournment, the Court denies Defendant's motion for the reasons set forth below.  Jury selection will begin on October 13, 2020, as scheduled.

## II.    DISCUSSION

Defendant raises several discrete reasons to support his request for an adjournment of the trial.  The Court addresses each argument in turn.

### 1. Public Access

Defendant first argues that though the courthouse is open to the public, "the elderly and/or those suffering from a pre-existing health condition," including Defendant's 79-year-old father, will be unwilling to attend the trial for fear of contracting the virus. (ECF No. 114 at 1.)  Therefore, he suggests, his constitutional right to a public trial is threatened.  The Court disagrees and finds no violation of his Sixth Amendment right to a public trial.  Though legitimate, his concerns do not warrant an adjournment.

With respect to Defendant's argument regarding his father, the Court "takes very seriously a defendant's right to have family members and friends present at his trial."  Carson v. Fischer, 421 F.3d 83, 91 (2d Cir. 2005).  Recognizing that Defendant's father suffers from various medical issues, the Court will endeavor to accommodate his concerns so that he can be present for the trial.

4

In particular, the Court intends to offer Defendant's father a reserved, isolated seat in the courtroom or, if he prefers, an isolated seat in a separate area of the courthouse from which he can watch a live video of the proceedings. However, a trial adjournment is not an accommodation the Court can offer Defendant's father. Though the Court is cognizant that he must make a "difficult decision" and realizes that his medical conditions may ultimately prevent him from attending his son's trial, the fact that he must make this decision does not violate his son's right to a public trial. The Court has "the discretion to conduct proceedings in an appropriate and efficient manner even if inconvenient to legitimate spectators" without violating the Sixth Amendment. Mickens v. Larkin, No. 12-CV-7953, 2014 WL 414013, at *13 (S.D.N.Y. Feb. 4, 2014), adopted by 2014 WL 6632950 (S.D.N.Y. Nov. 24, 2014), aff'd, 633 F. App'x 24 (2d Cir. 2016). Consequently, the possibility that Defendant's father may choose to forego attending the trial, despite the Court's efforts to accommodate him, does not mean the trial is not public, nor does it necessitate an adjournment.

Defendant also argues that "access will be limited to members of the public willing to risk contracting a serious, possibly fatal virus, by appearing in person at trial." (ECF No. 114 at 1.) However, his concern that spectators may be deterred from attending the trial because they fear contracting the virus does not mean that the trial is not public. See Herring v. Meachum, 11 F.3d 374, 380 (2d Cir. 1993) ("[T]he Sixth Amendment protects the right to a public trial; it does not guarantee that trials will be conducted to fit the schedules of all who wish to attend. Reasonable time, place, and manner limitations on access to the courtroom are permitted to ensure the fair and efficient administration of justice."). The possibility that some members of the public may choose not to attend Defendant's trial for reasons independent of any restrictions imposed by the Court does not violate Defendant's Sixth Amendment right to a public trial and does not necessitate an

adjournment. See United States v. Shryock, 342 F.3d 948, 974 (9th Cir. 2003) ("The denial of a defendant's Sixth Amendment right to a public trial requires some affirmative act by the trial court meant to exclude persons from the courtroom.") (quoting United States v. Al Smadi, 15 F.3d 153, 155 (10th Cir. 1994)).

However, the Court recognizes the possibility that at least some people's access to the trial may be limited by the policies the Court has imposed in response to COVID-19. Following the onset of the pandemic, the Eastern District has implemented various conditions that visitors to its courthouses must satisfy to gain entrance to the buildings—including passing a temperature check, answering a questionnaire, and wearing a mask, among other measures.[5] Certain members of the public may be excluded from attending the trial if they fail to meet any of these conditions for building access. For purposes of the Sixth Amendment, this potential exclusion of members of the public could constitute a "partial closure" of the courtroom. See United States v. Donziger, No. 11-CV-691, 2020 WL 4747532, at *3 (S.D.N.Y. Aug. 17, 2020). Nevertheless, even if these restrictions are considered a partial closure, a partial closure is not per se unconstitutional. As explained below, these restrictions pass constitutional muster and do not violate Defendant's Sixth Amendment right to a public trial.

In 2005, the Second Circuit analyzed an analogous situation in response to the policy of the U.S Marshals, following September 11, 2001, that required certain courthouse visitors to produce photo identification before entering the building. In United States v. Smith, a criminal defendant argued that his Sixth Amendment right to a public trial was violated because his "family, members of counsel's investigative staff, and members of the general public had been prevented

---

[5] See Eastern District of New York, Administrative Order 2020-22 (Aug. 5, 2020), available at https://img.nyed.uscourts.gov/files/general-ordes/Admin%20Order%202020-22.Entry%20Restrictions_0.pdf.

from attending his jury trial as a result of the photo identification policy." 426 F.3d 567, 570 (2d Cir. 2005). The panel applied the Supreme Court's four-part test from Waller v. Georgia, 467 U.S. 39 (1984), to evaluate whether this restriction of public access to the trial was constitutionally permissible under the Sixth Amendment. The Court assessed whether: "(1) closing the hearing would advance an overriding interest that is likely to be prejudiced; (2) the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure." Id. at 571 (quoting Waller, 467 U.S. at 45). Ultimately, the panel found that the policy was "at most" a partial closure because it "(1) barred only those would-be spectators who opted not to submit written identification, and (2) presumably may have 'chilled' attendance by some potential spectators who opted not to present themselves at the courthouse." Id. at 572. Recognizing that there were no reasonable alternatives to the partial closure and determining that it was no broader than necessary, the Court held that the identification policy passed constitutional muster because it served a substantial interest in promoting security and preventing terrorism. Id.

Similar logic applies to the instant situation. In applying the Waller test to analyze the partial closure that could result from the courthouse entrance restrictions, this Court finds that Defendant's Sixth Amendment right to a public trial is not violated. First, the Eastern District's entrance policies advance an overriding interest in protecting the health and safety of those attending and participating in the trial (as well as the other occupants and visitors to the building) from the spread of a contagious virus. See Gomes v. U.S. Dep't of Homeland Sec., No. 20-CV-453, 2020 WL 2606162, at *2 (D.N.H. May 22, 2020). Without the Eastern District's policies, this substantial interest in protecting public health and safety would be prejudiced.

Second, the partial closure is no broader than necessary to protect this substantial interest. The Eastern District has imposed measures consistent with those recommended by leading public health officials and medical experts throughout the country. These measures are widely applicable to various situations in which members of the public gather together. They are not unique restrictions that have been specifically implemented for purposes of Defendant's jury trial. Indeed, these measures now appear to be standard safety precautions, as demonstrated by the many federal district courts throughout the country that have adopted similar entrance requirements for their courthouses.[6] The Court therefore finds that the entrance restrictions are no broader than necessary to protect the Court's substantial interest in preserving public health and safety.

The Court recognizes that even if members of the public satisfy the entrance requirements, some spectators may be restricted from entering the courtroom because of capacity limitations resulting from the social distancing of the trial participants. Just as in pre-pandemic times, spectators must confront the reality that a courtroom is a physically limited space and not all who wish to attend can reasonably fit inside. In the past, the Court has successfully utilized overflow rooms where spectators can watch live video feeds of proceedings. The Court plans to do so again for this trial. These accommodations further demonstrate that the restrictions are no broader than necessary.

Finally, the Court has considered alternatives to the partial closure, but finds that any alternative would be unreasonable. When a district court determines that "a limited closure is

---

[6] See, e.g., Northern District of California (https://www.cand.uscourts.gov/notices/safety-protocols-for-northern-district-of-california-courthouses-effective-june-1-2020/); Northern District of Iowa (https://www.iand.uscourts.gov/sites/iand/files/Public%20Administrative%20Orders.pdf); District of Montana (https://www mtd.uscourts.gov/sites/mtd/files/COVID%20Administrative%20Order%2020-25%20face%20covering%20policy.pdf); Southern District of New York (https://www nysd.uscourts.gov/sites/default/files/2020-07/SDNY%20Screening%20Instructions.pdf); Southern District of Texas (https://www.txs.uscourts.gov/page/covid-19-general-and-special-orders).

deemed warranted, it is the obligation of the party opposing the closure to suggest possible alternatives." Smith, 426 F.3d at 573.  Defendant advances only one possible alternative: postponing the trial until the pandemic abates and normal circumstances resume at some indeterminate time in the future.  (ECF No. 114 at 5.)  As explained below, the Court does not find postponement reasonable under the current circumstances in which the effects of the virus in the nearby area have been on a stable, downward trend.  Otherwise, the Court has "no obligation to consider alternatives sua sponte." Smith, 426 F.3d at 574.  Accordingly, the Court determines that there are no reasonable alternatives to proceeding with the trial other than using the Court's robust safety measures.  Given the tools at the Court's disposal, the Eastern District's entrance requirements are the most reasonable means to advance the Court's substantial interest in preserving the public's health and safety.  Therefore, any partial closure that results from the entrance requirements do not violate Defendant's Sixth Amendment right to a public trial.

   **2. Jury Composition**

Defendant next challenges the composition of the jury pool.  He contends that the jury pool will exclude "older people and those with pre-existing health conditions" because "it is only logical to expect that a large percentage of this class of people will not appear for jury duty, or if they do, they will ask to be excused for medical reasons."  (ECF No. 114 at 2.)  Defendant appears to be raising a fair-cross-section challenge.  Both the Constitution and the Jury Selection Act entitle Defendant to "a jury composed of a fair cross section of citizens in the judicial district." United States v. Walsh, 884 F. Supp. 2d 88, 90 (S.D.N.Y. 2012).  To prevail on a claim that he has been deprived of his right to a jury made up of a fair cross section of the community, Defendant must satisfy a three-part test by showing: (1) "the group alleged to be excluded is a 'distinctive' group in the community"; (2) "the representation of this group in venires from which juries are selected

9

is not fair and reasonable in relation to the number of such persons in the community"; and (3) "this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979). Defendant has not even attempted to make this showing, and he has advanced no evidence to support his contention beyond speculation. His fair-cross-section argument is premature at this juncture since potential jurors have not even had the opportunity to respond to juror summonses.

Nonetheless, the Court notes that even if this case had been tried before the onset of the pandemic, "older people and those with pre-existing health conditions" may have been excluded from the jury anyway. The Jury Selection Plan of the United States District Court for the Eastern District of New York, last amended on October 30, 2006, permits excusal from jury duty in response to individual requests by "[p]ersons over 70 years of age."[7] The Plan also excludes from qualification for jury service those "incapable by reason of mental or physical infirmity, to render satisfactory jury service."[8] Though the Second Circuit "has not considered the implications of permitting persons aged over seventy to opt out of jury service," courts that have addressed this issue, including a district court in this circuit, have found no violation of the requirements of the Sixth Amendment or the Jury Selection Act that the jury be made up of a fair cross section of the community. Walsh, 884 F. Supp. 2d at 90; see also Silagy v. Peters, 905 F.2d 986, 1010 (7th Cir. 1990). Accordingly, the Court presently has no basis to credit Defendant's argument that he has been deprived of a jury pool made up of a fair cross section of the community.

---

[7] See Eastern District of New York, Jury Selection Plan (as amended Oct. 30, 2006), § 7, available at https://img.nyed.uscourts.gov/files/local_rules/juryplan.pdf.

[8] Id. at § 9.

### 3. Masked Jurors and Defendant

Defendant next argues that because jurors will wear face masks, his attorneys will be unable to judge the credibility of potential jurors during voir dire and cannot assess jurors' reactions to witness examinations and the opening and closing statements. (ECF No. 114 at 2–3.) Defendant cites no authority for the proposition that the entirety of jurors' faces must be visible at all times throughout the trial. As the government correctly notes, "there is no constitutional right that requires a defendant to see a juror's facial expression or allows him to communicate non-verbally with a juror." (ECF No. 113 at 3.)

Being able to see jurors' noses and mouths "is not essential" for assessing credibility because "[d]emeanor consists of more than those two body parts" since it "includes the language of the entire body." United States v. Crittenden, 20-CR-7, 2020 WL 4917733, at *7 (M.D.G.A. Aug. 21, 2020). Defendant's attorneys can still observe and evaluate other aspects of jurors' body language that will be fully visible during the trial. While recognizing that "being able to see a potential juror's full facial expressions may be tactically preferable, . . . the Court is unconvinced that it is required by the Constitution." Id. Further, even if they cannot see jurors' noses and mouths, Defendant's attorneys still have access to other tools to assess the credibility of potential jurors. All potential jurors will complete informative questionnaires, which Defendant himself will draft with the government for the Court's approval, and must respond to follow-up questioning by the Court during voir dire, to which Defendant may submit his own proposed questions. The Court therefore finds that Defendant's right to a fair and impartial jury will not be impaired because jurors will be wearing masks during trial.

Additionally, Defendant claims that if he wears a mask in the courtroom, the jury will be unable "to observe his face or observe his reaction to evidence, both favorable and unfavorable."

(ECF No. 114 at 4.) Here, too, Defendant cites no authority or constitutional basis for the notion that his entire face must be fully visible to the jury during trial. Moreover, the Court does not credit Defendant's argument that "the jury may infer that a defendant required to sit through a trial while wearing a face mask must be particularly dangerous or loathsome" because "[h]istorically, the wearing of masks has been perceived as dangerous or nefarious." (Id. at 4.) Defendant's claim is undermined by the reality that every person in the courtroom participating in the trial, including the jurors themselves, the judge and Court staff, the attorneys for both sides, and any members of the public in attendance, will all be wearing masks as well. Therefore, an adjournment is not justified on this basis, and Defendant shall wear a mask during the trial. The Court will discuss additional details regarding masks for all trial participants at the upcoming conference on September 16, 2020.

### 4. Trial Preparation

Defendant next argues that his trial preparation will be impaired because some witnesses may be reluctant to meet with his attorneys or investigator. (Id. at 3.) Other than a witness who expressed hesitance at the beginning of the pandemic in March 2020, Defendant has not identified any other witnesses who have recently refused to meet with his attorneys or investigator now that society has begun to reopen. Further, Defendant does not explain why such meetings cannot take place while the participants are engaged in social distancing or why his attorneys and investigator are unable to speak to witnesses by phone or video chat.

As a matter of law, the Court agrees with the government that Defendant "does not have a constitutional right to interview witnesses in advance of trial." (ECF No. 113 at 4.) Indeed, "witnesses have a right to decline to be interviewed." United States v. Sabhnani, 599 F.3d 215, 246 (2d Cir. 2010); see also United States v. Agostino, 132 F.3d 1183, 1191 (7th Cir. 1997) ("The

12

inability of a defendant to interview witnesses is a constitutional problem only if the state artificially restricted the defendant's ability to obtain evidence. . . [A] witness is free to decide whether to grant an interview with defense counsel.") (citations and internal marks omitted). Though the Court recognizes that the pandemic presents logistical challenges to Defendant's trial preparation, these difficulties—many of which appear speculative at this point—do not entitle him to relief from the Court.

Defendant also raises concerns that some witnesses may be reluctant to appear in a public courtroom while the pandemic is ongoing. (Id.) Again, Defendant's argument is speculative, and he has not identified any witnesses who have refused to testify at the trial in person. Should this situation occur, the Court is willing to consider accommodations for any such witness to testify remotely by live, two-way video, following an application by Defendant. Defendant's constitutional rights would not be violated in this scenario because he "has no constitutional right to present evidence through live, in-person testimony only." United States v. Saipov, 412 F. Supp. 3d 295, 299 (S.D.N.Y. 2019). Indeed, the Second Circuit has recognized exceptional circumstances when remote testimony is permissible "via two-way closed-circuit television when this furthers the interest of justice." United States v. Gigante, 166 F.3d 75, 81 (2d Cir. 1999). Though Defendant raises legitimate concerns with how the pandemic affects the logistics of his trial preparation, he has not identified any violation of his constitutional rights that necessitates adjourning the trial.

**5. Compelling Reasons to Proceed with Trial**

Finally, Defendant argues that the government has not "put forth a compelling reason why this case should be tried now." (ECF No. 114 at 4.) He requests that the Court schedule the trial at a time when circumstances "will not limit his ability to defend himself." (Id.) Citing no

13

evidence, he claims that "[i]t is more likely that in the near future we will be able to conduct trials without the limitations currently planned." (Id. at 5.)

While the Court wishes Defendant's argument on this point could be credited, the government's assessment of the situation appears more realistic in that "there is no clear end date to the pandemic and this may just be the 'new normal,' at least for the near future." (ECF No. 113 at 4.) As Judge Preska recently observed in responding to similar arguments raised by a criminal defendant, "nobody has a crystal ball, and nobody can predict if/when the so-called 'new normal' of life in the time of COVID-19 will improve to the point that trials can proceed as they did before the 'old normal' disappeared." Donziger, 2020 WL 4747532, at *4.

The Court recognizes that proceeding with a trial during an unprecedented global pandemic presents numerous costs, inconveniences, and logistical challenges for all parties involved. Nonetheless, in recent months, the state of New York and the Long Island region, in particular, have experienced significant and sustained improvements in the number of COVID-19 transmissions, hospitalizations, and deaths.[9] Life has slowly begun to approach a return to normalcy in many ways. Just as many businesses have restored their operations while adopting various safety measures, so too must the Court. This encouraging trend has created "a window of opportunity for holding a public trial . . . and it is not clear how long those conditions will maintain." Id. at *2. Public health experts have warned about the possibility of a "second wave" of potential infections in areas where virus conditions have improved. Before that fear materializes, the Court should not squander the opportunity to conduct a trial while utilizing all of the health and safety precautions at its disposal.

---

[9] See Robert Brodsky, New York State reaches record low COVID-19 infection rate, Gov. Andrew M. Cuomo says, Newsday (Aug. 28, 2020), https://www.newsday.com/news/health/coronavirus/coronavirus-long-island-new-york-1.48674041.

14

Without a clear end date to the pandemic, the Court cannot simply delay justice indefinitely, as Defendant would prefer.  The Court, the public, the government, and the alleged victim are also stakeholders in this analysis and have interests in the expeditious resolution of this case.  Given the time that has passed since the events alleged in the indictment took place—some as long as nine years ago—and the almost three years that have now elapsed since Defendant was initially indicted, the Court must ensure that this matter does not continue to drag on.  As the government points out, waiting longer to proceed to trial increases the likelihood that witnesses may become unavailable or uncooperative, or their memories may fade. (ECF No. 113 at 7.)  Defendant's proposal to adjourn the trial indefinitely until "normal" circumstances resume raises practical concerns that the Court cannot ignore.

Though this situation presents many challenges, the Court is committed to working through them carefully and resolves to coordinate with both parties to manage any concerns.  To facilitate a trial that ensures the safety of all participants while protecting Defendant's constitutional rights, the Eastern District has been in regular consultation with experts in epidemiology and HVAC requirements.  Before trial, these experts will personally examine the layout of the courtroom and the step-by-step operating plan for the trial.  In addition, the Court has been in communication with other district courts throughout the country that have successfully resumed jury trials during the pandemic.  This trial will adopt many of the best practices utilized by those courts.  At the September 16, 2020 conference, the Court and the parties will discuss in detail the logistical plans for the trial.  The Court will explain specific safety and sanitation measures, and the parties will be permitted to examine the configuration of the courtroom as adapted for social distancing.  Any logistical concerns necessitating the Court's immediate attention before that conference shall be filed on ECF in the form of a letter by September 8, 2020.

## III. CONCLUSION

Based on the foregoing, Defendant's motion to adjourn the trial is DENIED. The trial will proceed as scheduled on October 13, 2020.

**SO ORDERED.**

Dated: September 1, 2020
       Central Islip, New York

                                              /s/ (JMA)
                                              JOAN M. AZRACK
                                              UNITED STATES DISTRICT JUDGE