LAW OFFICES OF

# JEFFREY LICHTMAN

11 EAST 44TH STREET
SUITE 501
NEW YORK, NEW YORK 10017
www.Jeffreylichtman.com

JEFFREY LICHTMAN
JEFFREY EINHORN
JASON GOLDMAN

PH: (212) 581-1001
FX: (212) 581-4999

November 5, 2021

**BY ECF**
Hon. Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Re: <u>United States v. Vincent Trimarco, Jr.</u>, **17 CR 583 (JMA)**

Dear Judge Azrack:

## A.     INTRODUCTION

This letter is submitted on behalf of defendant Vincent Trimarco in anticipation of his December 2, 2021 sentencing. With this letter, the defendant respectfully requests a sentence which is "sufficient, but not greater than necessary to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2) due, in part, to the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The basis for this request is as follows: ████████████████████████████████████████

████████████████████████████████████████

████████████████████ *second*, a review of the defendant's life and the near 50 character letters appended to this submission reveals many extraordinarily good deeds, including the defendant's long history of pro bono legal work, volunteerism and charity efforts. The prospects for Mr. Trimarco's rehabilitation – even after his likely disbarment – are therefore very good.

## B.     THE DEFENDANT'S GUILTY PLEA
## AND RESULTING GUIDELINES RANGE

On October 6, 2020, Mr. Trimarco pleaded guilty pursuant to a plea agreement to Count One of a seventeen count Superseding Indictment, which charged him with Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. § 1349. Mr. Trimarco faces no statutory minimum and a maximum sentence of 20 years imprisonment.

As recounted in the Plea Agreement, the Guideline for a violation of 18 U.S.C. § 1349 is U.S.S.G. § 2B1.1, which sets the base offense level at 7. See Plea Agreement at p. 3. Fourteen levels are then added due to a loss greater than $550k, but less than $1.5M (§ 2B1.1(b)(1)(H)), two levels are also added due to the defendant's use of sophisticated means (§ 2B1.1(b)(10)(C)), and two levels are added for the defendants's abuse of trust, resulting in an offense level of 25. Plea Agreement at p. 3; U.S.S.G. § 3B1.3. With two levels subtracted for acceptance of responsibility (U.S.S.G. § 3E1.1), the total offense level becomes 23, carrying an advisory sentencing range in the Criminal History Category I of 46 to 57 months imprisonment.[1] Plea Agreement at p. 3.

### C. THE DEFENDANT'S BACKGROUND AND THE NATURE OF THE OFFENSE – APPLICATION OF § 3553(a) FACTORS

Since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines have been rendered advisory in nature, leaving sentences to the district court's discretion, guided by the Guidelines and the other factors contained within 18 U.S.C. § 3553(a) and bounded by any applicable statutory minimum and maximum. This Section directs sentencing courts to "impose a sentence" that is "sufficient, but not greater than necessary, to comply with" the "need for the sentence ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant ...." 18 U.S.C. §3553(a)(1)-(2) (emphasis supplied). In making this determination, courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant ...." 18 U.S.C. § 3553(a)(1). With these aims in mind, we offer the following for the Court's consideration.

#### The History and Characteristics of the Defendant

We have attached nearly 50 character letters in support of this submission, reflecting the significant and meaningful role that Mr. Trimarco has played in the lives of friends, family members and recipients of his charity, ███████████████████████

---

[1] The guidelines calculation in the PSR differs from the Plea Agreement in that Probation assessed a two level enhancement for leadership, resulting in a total offense level of 25 and yielding an advisory sentencing range in the Criminal History Category I of 57-71 months imprisonment. See PSR at ¶¶ 28, 34, 84. The stipulated guidelines range from the Plea Agreement, however, reflects the parties' understanding at the time of the plea.

his dedication to the New York Guard. It would be impossible to include a letter from every individual whom the defendant has positively influenced.[2] Still, the myriad letters on which we do remark paint a consistent picture of man who "[d]oes so many wonderful things for the community," (April 27, 2021 Letter of Glenn Beccarelli, attached as Exhibit 1) "volunteers his time [and] is generous to charity," (Letter of Jeff Cohen, attached as Exhibit 2) and provides "[u]nfailing love for family and friends." March 22, 2021 Letter of Mary Ann Giambattista, attached as Exhibit 3; see Letter of John Girolamo, attached as Exhibit 4 ("generous, honest and accommodating on all levels").

Further, the letters describe a man who "served ... the NYS Guard ... with honor," (April 15, 2021 Letter of Hector Sepulveda, attached as Exhibit 5) and whom others have "called for advice often." Letter of Melissa Santos, attached Exhibit 6. Finally, several of the letter writers expressed "shock[]" upon learning that Mr. Trimarco committed these terrible and selfish acts. May 4, 2021 Letter of George Maglaras, attached as Exhibit 7; see also April 18, 2021 Letter of Kenneth Mark, attached as Exhibit 8 ("so out of character, the word 'shocking' comes to mind"); March 24, 2021 Letter of Elinor Braitman, attached as Exhibit 9 ("hard for me to believe that Vincent would be involved in a criminal matter"); Letter of John Beck, attached as Exhibit 10 ("surprised"). Sadly, were it not for this sentencing, many of Mr. Trimarco's exceptionally good deeds probably would have gone unrecognized.



---

[2] Additional character letters in support of Mr. Trimarco are collected and attached to the end of this submission as Exhibit 46.





### Dedication to Community Service, Pro Bono Legal Work and the New York Guard

Several letters submitted by friends and supporters of the defendant hailed his very real dedication to community service, including providing pro bono legal work and his many years as a member of the New York Guard. See April 29, 2021 Letter of Charlie Vita, attached as Exhibit 16 (observing "volunteer work ... over the years for ... veterans"); Ltr. of Glenn Beccarelli, Ex. 1 ("does so many wonderful things for the community").

For example, John Stein, who met the defendant "at a charity event," writes that he has "been involved in numerous [charities] raising hundreds of thousands of dollars for local LI [organizations], as well as the Leukemia Society ...." March 23, 2021 Letter of John Stein, attached as Exhibit 17. Similarly, Nancy Romano notes in her letter that the defendant "dedicated a lot of time and donations [to] the American Patriot Hero Fund as well as other [v]eteran's organizations." March 24, 2021 Letter of Nancy Romano, attached as Exhibit 18; Ltr. of Jeff Cohen, Ex. 2 ("volunteers his time [and] is generous to charities (especially when it comes to our U.S. troops"). And Mark Sarro hails that his "interaction[s] with Vincent arose from the donation of his time to support various organization[s] ...." May 17, 2021 Letter of Mark Sarro, attached as Exhibit 19.

In his letter to the Court, Douglas Perinchief details his numerous experiences with the defendant in many Veterans related charities:

> Within 2 years of meeting Vince we would spend time running to fund raisers for Wounded Warriors, Homes for Heroes, and other veterans organizations. After some discussion, Vince, myself, and a few others who frequented these events decided we should try to start our own 501c3 organization. We knew and discussed that if we did this we would be able to ensure that 100% of what was raised would make its way to veterans in need. Our accountant and Vincent (our attorney) each spent countless (unbilled) hours navigating the IRS regulations and we were ultimately granted our charity, non-taxable status. American Patriot Heroes Fund (AMPAT) was born. Over the next several years the management shifted within AMPAT. All being younger professionals with busy personal and professional lives, responsibility and leadership positions shifted, however our monthly meeting at Vince's office to discuss our next outreach effort always remained the same. We held golf outings, did TV and radio appearances, held private dinner fundraisers, all with one common goal: to help veterans in need.

> Over the course of several years with AMPAT, I would be comfortable saying that we were able to help dozens of Veterans who truly needed it. I personally think that one notable outreach we had was when we focused on adaptive sporting equipment for physically disabled Veterans. One such veteran, Stephen Valyou, was shot by a sniper in Iraq and paralyzed from the waist down.

Rendered unable to ever walk again, Stephen's outlook on life and fun with his children was bleak, until Vince had the idea after speaking with him to look into a recumbent bicycle for him. We bought mono skis and bicycles, sent veterans to shooting camps or horse retreats and I truly believe that we made a difference. ...

At one point in one of our monthly meetings Vince brought an idea to the table for a Walter Reed visit. He had already lined up RV transportation and had the idea of providing the most recently wounded and many times bed ridden veterans with laptops and internet hot spots ... and one weekend close to Christmas we were able to head to Walter Reed and present these veterans with a great way to maintain visual contact with their families. The men and women we met loved the gift and appreciated so much that they would now be able to reach out and video chat with their loved ones at any hour of the day. I clearly remember one Marine, a young probably still teen veteran who was a double leg amputee, and a single arm amputee wearing a T-Shirt that read "Combat Wounded Marine, Some Assembly Required," welcome us into his room with a big hug, a smile, and a great attitude. His mom on the other hand sobbed in the corner. She appreciated us being there however her pain was all too recent. I remember the Marine telling us that she wanted to stay with him but that she needed to go back home to work, because she would have to pay her bills while at the same time save up for months and months worth of plane tickets to visit him throughout his recovery. While we couldn't take on all of their household bills, Vince and I discussed it and we realized that visiting plane tickets would be a great new mission. We stayed in touch with this family as well as others. We contacted JetBlue who were amazing and they would send us buddy pass tickets for families to ride on and we would buy tickets for others where JetBlue fares were not available. While AMPAT didn't last forever as all of our lives became busier, families and businesses grew, and responsibilities really limited our time, *I am truly convinced that the small difference we made as a whole was a huge difference to many.*

Letter of Douglas Perinchief, attached as Exhibit 20 (emphasis supplied); <u>see also</u> March 26, 2021 Letter of Alexandra Georgetti, attached as Exhibit 21 ("I have seen the devotion and dedication he has given to veterans and their families").

Regarding his dedication to providing pro bono legal services, retired Suffolk County Judge John Toomey informs the Court of his experiences with the defendant:

> In 2011, Suffolk County initiated the Second Veterans Treatment Court in New York State. Being a Vietnam Combat Veteran one of the only Veterans sitting on the bench, I was selected to start up and preside over the new Court. At the onset of the Court, Vincent came to me and offered to represent unrepresented Veterans, pro-bono. Over the years, I took advantage of Vincent's generosity and assigned him to represent indigents. I always knew Vincent to be extremely generous with his time when it came to Veteran[s] and I think this is a positive indication of the character of Vincent.

April 28, 2021 Letter of John J. Toomey, attached as Exhibit 23; November 1, 2021 Letter of Holly Moreland Beck, attached as Exhibit 23 ("Often, he has donated his time and expertise to assist my family at a moment's notice"). Fellow New York Guard volunteer Raymond Gallagher confirms that Mr. Trimarco represents "active duty [soldiers] and veterans who do not have legal representation whenever he sees them in court unaccompanied by legal counsel." May 28, 2021 Letter of Raymond P. Gallagher, attached as Exhibit 24.

The defendant's office manager, Nancy Romano, confirms his dedication to providing no or low cost legal services to those in need, recalling that the "office was not about money as [she] had found in times past working in law firms ...." Ltr. of Nancy Romano, Ex. 18; see also April 12, 2021 Letter of Ida and Eugene Lesserson, attached as Exhibit 25 ("Vincent has offered us (without compensations), advice and assistance"); March 27, 2021 Letter of Mildred and Frank Longo, attached as Exhibit 26 ("Over the years, Vincent gave me much advice regarding my ... parents and never asked for anything in return").

Friend and client Holly Moreland Beck has also witnessed the defendant's good nature and dedication to charity, recalling:

> I have personally witnessed his kindness and generosity towards those who needed it most and felt undeserving. Vincent's kind and generous nature were exhibited in his actions with a homeless friend and a severely impaired person by drug abuse. Vince made many attempts to obtain assistance for both people.

Ltr. of Holly Moreland Beck, Ex. 23.

This generosity is also reflected in the defendant's participation with the New York Guard, which he joined in 2008 and where he has spent considerable time providing legal services for deploying troops. PSR at ¶ 76. For example, Hector Sepulveda, who notes that the defendant "has served his community and the NYS Guard in a manner that has always been professional and with honor," recalls:

> [H]e would continue doing programs and new initiatives for the Guard. This was done at no expense for those who participated. Some examples [of] programs that people attended in large numbers were the filing of wills and power of attorney documents. Mr. Trimarco also served as counselor to members (free of charge) that had legal issues and concerns. I admired him for all he did ....

Ltr. of Hector Sepulveda, Ex. 5; see also Ltr. of Mark Sarro, Ex. 19 (provided legal services "for soldiers and airm[e]n stationed in the [S]tate of New York who were on the verge of deploying ...."). First Lieutenant Andrew McNulty confirms this take, recalling that he has "seen him do a couple of hundred hours of pro bono work for ... soldiers." Letter of 1LT Andrew McNulty, attached as Exhibit 27; see also August 4, 2021 Letter of Michael Rogers, attached as Exhibit 28 ("Mr. Trimarco has aided me in legal issues and other educational material used in instructing the soldiers under my position").

Of his experiences as a fellow officer in the New York Guard, John Boyle writes:

> Vince had a reputation as an exemplary officer who went above and beyond what was needed to accomplish his primary duty assignment. Although training and operations was not his primary role, he used his extensive contacts in the community to arrange training opportunities for our enlisted soldiers. For instance, he collaborated with building contractors on Long Island to train our service members on how to use forklifts, chain saws and other debris-clearing implement. These are skills that our service members use in domestic emergency operations and these training events saved the state from expending funds to hire external subject-matter experts to teach these essential skills to our soldiers.

> Vince also had a reputation as an officer who took care of enlisted soldiers. Because the New York Guard is a volunteer organization many of us use our own funds to buy uniforms and supplies. There were more than a few times over the years that we served together that Vince reached into his own pocket to help less fortunate

> enlisted soldiers buy equipment and uniform parts so that they
> could serve. And because we do not have state funding to buy
> meals for drills, Vince often used his own money to buy meals for
> soldiers.

April 14, 2021 Letter of John T. Boyle, attached as Exhibit 29; see also August 5, 2021 Letter of
Dev Shafeek, attached as Exhibit 30 ("Within his service, he went over and beyond the call of
duty, often providing financial assistance to fellow service members to acquire the proper
uniforms and equipment needed for disaster missions"). And Master Sergeant Steven Milito,
who trained with the defendant, confirms that in addition to the legal services that he offered to
soldiers, Mr. Trimarco "was able to use his civilian status to cure financial shortfalls in funding
[the organization] as he was able to procure local business donations for these operations." May
14, 2021 Letter of Master Sergeant Steven Milito, attached as Exhibit 31.

A Reliable Friend and Mentor

In addition to the praise for his pro bono legal services and dedication to volunteering,
many of the letters submitted by Mr. Trimarco's supporters recalled that he has been a good
friend in times of need, as well as a mentor. See, e.g., Letter of Brian Gordon, attached as
Exhibit 32 ("he has always someone I looked up to for fatherly advice"); Ltr. of John Beck, Ex.
10 ("He's been a mentor and an advisor for me ...."). For example, Malissa Finnegan writes of
the numerous times that the defendant has been there to support her:

> I would like to introduce myself as Malissa Ojeda, who in 1986
> was a 16-year-old girl starting her sophomore year at St Anthony's
> high school in South Huntington.
>
> I was an only child living at home with a divorced mother and her
> grandparents. I was quite fortunate enough to meet Vinnie. His
> generosity, good hearted nature, kindness, solver of problems, be it
> financial or otherwise, and his loyalty as a good friend continues to
> this day.
>
> My teenage years turned into adult years. Vinnie was charitable
> enough to assist with a car donation, assistance with finding a
> lawyer to assist with my dying grandmothers will. Even in my 20's
> and 30's, I could ask Vinnie for his assistance in anything,
> especially when it came to my mother or my grandmother. He was
> always readily available.

> My adulthood has turned into Middle Age. I am now Malissa
> Finnegan, a nurse, a wife and more importantly a mother.
> Vinnie was there for me when I needed legal assistance as well as
> moral support. He was there when I was buying my house and
> closing of my house.
>
> Now my medical problems have become financial problems. I
> always needed a referral or a recommendation. ... I am still able to
> reach out to Vinnie when I encounter a problem, no questions
> asked.

April 21, 2021 Letter of Malissa Finnegan, attached as Exhibit 33; April 25, 2021 Letter of
Meaghan O'Brien Reyes, attached as Exhibit 34 ("I have been a recipient of Vince's genuine
kindness over and over throughout the years"). Similarly, Douglas Perinchief praises that there
was "an open door policy in his office, be it for mentorship, advice, or professional counsel."
Ltr. of Douglas Perinchief, Ex. 20.

Friend Anthony Uvenio recalls that the defendant "has always been there for [him] in all
the various ways [he] needed." October 30, 2021 Letter of Anthony Uvenio, attached as Exhibit
35. Specifically, as Mr. Uvenio explains:

> He helped give me a job at one of the companies that his family
> started that gave me management experience, he helped introduce[]
> me to my current employer where I have worked for ober twenty-
> three years, and he helped introduce me to my wife of almost
> twenty years. He is also responsible for helping me live in the
> home I'm in now. Aside from his always looking to help me, he
> and his family treated me like another son and were continually
> there for me in more ways than I can count or remember.

Id.; see also Ltr. of Melissa Santos, Ex. 6 ("a man I have called for advice often"). Similarly,
Angie Anaxagorou recalls: "When I think back I've been in many situations where I've picked
up the phone and Vincent was my first call. He's never failed to lend a helping hand. When I
was pregnant ... and was unable to find a job, Vincent offered me one without hesitation." March
25, 2021 Letter of Angie and Alex Anaxagorou, attached as Exhibit 36; see also Letter of
Richard Bauso and Linda Mitchell, attached as Exhibit 37 ("My husband suffered a stroke in
2008 [and] we were unable to keep our dream home ... Mr. Trimarco sprung into action and
helped us through this difficult situation from A-Z. He is the most selfless person we have ever
encountered").

Dedicated Family Member

Given the above praise concerning his efforts to aid friends, it is perhaps unsurprising that many letter writers also observed Mr. Trimarco's dedication to his elderly parents and other family members, ███████████████████████████████████████ See Ltr. of John Toomey, Ex. 22 ("Vincent is a loving and caring son and father").

████████████████████████████████████████

████████████████████████████████████

██████████████████████, others have taken note of Mr. Trimarco's dedication to his family members. See, e.g., Letter of James Spero, attached as Exhibit 38 ("I [have] witnessed his love of family and the respect he had for his parents, grandparents, aunts and uncles"); Ltr. of Ida and Eugene Lesserson, Ex. 25 ("We have always been impressed by the respectful and caring manner in which Vincent treats his parents and other family members, particularly his [108 year old] grandmother"). For example, the defendant's elderly parents relay to the Court that he is always "the first to be there for [them]," when the need arises. Ltr. of Barbara and Vincent Trimarco, Sr., Ex. 15. And Mr. Trimarco's uncle, Dominick Giambattista, informs of the many instances where he went above and beyond to help him, his wife and his daughter:

> He is always the first to help me with any legal advice or helping me with auto repairs. He was always the first to help my daughter whenever she was in a bind no matter where she was located. My daughter once was a share in a house on the New Jersey shore that made her feel very uncomfortable. Not a good group. He sent a car down to her to bring her home. I will never forget that. My wife, Mary Ann, got into a very bad car accident at the LIRR parking lot while I was away. He got there before the police arrived and had the car towed to one of his clients. He then brought her home and comforted her making her feel safe until I arrived home. ...

March 22, 2021 Letter of Dominick Giambattista, attached as Exhibit 41.

A Respected Counselor

Finally, despite the horrific details of this case, Mr. Trimarco received several letters from former clients who offered high praise for his legal services. For example, Brian Gordon recalls in his letter:

> When I first got sober, many people were not ready to give me the second chance in life that Vincent gave me, he always said to help the next person and pay it forward. I always recommend Vinny to my friends and colleagues for any legal help, questions or advice, and he has done the same for them always in making them feel safe and comfortable.

Ltr. of Brian Gordon, Ex. 32; see also Ltr. of John Girolamo, Ex. 4 ("I have not had many dealings with attorneys, but it was immediately evident that Vincent was well versed in [the] law and was well prepared"). Similarly, Rabbi Mendel Teldon informs the Court:

> He has given of his time and resources, usually pro bono, to help us help others.
>
> One story comes to mind. We were putting up a temporary tent to host our High Holiday services and realized at the last minute that we were lacking all the appropriate permits. He spent countless hours, on a weekend, to bring all the government parties together to get the papers in record time. One of the officials commented how miraculous it was that we pulled it off. Thanks to Mr. Trimarco.
>
> What has been most interesting for me is that he has called me many a times to understand the Jewish community, what sensitivities we might have and how he can understand our history and traditions even better. Although sometimes he was already well aware of the traditions. Like when we built a Sukkah for the Jewish holiday and a neighbor complained to the Town. Mr. Trimarco called the Supervisor and explained it all to him and it was all worked out.

April 22, 2021 Letter of Rabbi Mendel Teldon, attached as Exhibit 42; see also April 20, 2021 Letter of James Longworth, attached as Exhibit 43 ("Mr. Trimarco has always behaved in a professional manner and has represented me to the best of his ability").

Retired Judge John Toomey praises that the defendant "appeared before [him] many times in many different cases [and he] always found him to be well prepared, on time, and ready to proceed on his cases." Ltr. of John J. Toomey, Ex. 22. Michael Gervasi confirms that Mr. Trimarco "never hesitated to offer or provide expert assistance and has helped [his] family on numerous occasions." March 24, 2021 Letter of Michael Gervasi, attached as Exhibit 44; see also March 25, 2021 Letter of Timothy and Elizabeth Clark, attached as Exhibit 45 ("He has become more of a friend than a lawyer"). And finally of her experiences working for Mr. Trimarco and witnessing his interactions with his clients first hand, Nancy Romano writes:

> I came to work for Vincent as an office manager/paralegal in early 2018 when his secretary went on vacation to be married and I permanently stayed on as staff at his law firm. I found a whole new

> respect and love for him as a Counselor who genuinely cared for
> his clients, and a man of his word. ... He carried all his clients
> under his wing and treated them like family. As an office manager
> I have witnessed the sorrow and grief of clients about the thought
> of losing him as an Attorney.

Ltr. of Nancy Romano, Ex. 18.

### D.    **CONCLUSION**

Defendant Vincent Trimarco comes before this Court asking for mercy. A life filled with
good deeds and hard work has been marred by his criminal actions. Nevertheless, as the
powerful enclosed letters reveal, Mr. Trimarco is a decent and giving man who unlike many
defendants has made extraordinary efforts to help friends, family, and even strangers throughout
his life, when no one was watching, when he had no need to impress a judge deciding his fate.
For these reasons and the others stated herein, a lenient sentence is respectfully requested.

Respectfully submitted,

Jeffrey Lichtman

Encs.

cc:    Catherine Mirabile, Esq.
Michael Bushwack, Esq.
Assistant United States Attorneys (by ECF & email)