

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

CMM
F. #2017R00578

*610 Federal Plaza*
*Central Islip, New York 11722*

February 29, 2024

By ECF

The Honorable Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re: United States v. Vincent Trimarco
       Criminal Docket No. 17-583 (S-1) (JMA)

Dear Judge Azrack:

    The government respectfully submits this letter in response to the defendant Vincent Trimarco's motion, dated February 6, 2024, seeking (1) resentencing following appeal, pursuant to the Second Circuit Mandate; and (2) a reduction in his sentence based on the "zero-point offender" amendment to the U.S. Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). The government submits that, consistent with the Second Circuit's Mandate, the defendant must be resentenced with respect to the special conditions of supervised release only. See Defense Exhibit A. The government, however, objects to the defendant's request for a reduction of his sentence, as the defendant is not entitled to the zero-point offender reduction. As discussed below, the defendant caused substantial financial hardship and, thus, is disqualified from receiving the zero-point offender adjustment under § 4C1.1. See U.S.S.G. § 4C1.1(a)(6).[1]

---

[1] The defendant is, arguably, also disqualified from receiving the zero-point offender reduction because he was an organizer/leader. See U.S.S.G. § 4C1.1(a)(10). As discussed below, in calculating the defendant's advisory Guidelines range, the U.S. Probation Department ("Probation") determined that the defendant was subject to a two-point role adjustment for being an organizer under U.S.S.G. § 3B1.1(c). (See Presentence Report ("PSR") ¶ 28.) Neither party objected to the Guidelines calculation in the PSR. The government inadvertently failed to include the two-point leadership role adjustment in its Guidelines calculation in the PSR and, at the time of sentencing, stood by its stipulated advisory Guidelines calculation of 46 to 57 months' imprisonment on the grounds that this range was sufficient, but not greater than necessary, to achieve the goals of sentencing in this case. Under the zero-point offender amendment, assuming the defendant qualifies (which he does not), the defendant's Guidelines range would be 37 to 46

I.    Background

On October 6, 2020, during jury selection, the defendant pled guilty before Your Honor to Count One of a seventeen-count superseding indictment, charging him with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349, in connection with a scheme to defraud the minor beneficiary of an estate, in order to steal settlement funds from a federal wrongful death proceeding.  (PSR ¶ 1; see also id. ¶¶ 4-14.)

On January 7, 2021, Probation issued the PSR; on February 3, 2021 and March 17, 2021, it issued its first and second Addenda, respectively.  Relevant here, the defendant was determined to have a criminal history score of zero, placing him in Criminal History Category I.  (PSR ¶ 38.)  Probation calculated the defendant's adjusted offense level as 25, with an advisory Guidelines range of 57 to 71 months' imprisonment.  (Id. ¶ 84.)  Neither party objected to the Guidelines calculation in the PSR.  Nonetheless, consistent with the plea agreement between the parties, the government submitted that a sentence within the stipulated Guidelines range of 46 to 57 months was sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.[2]

The defendant was sentenced on December 2, 2021.  At sentencing, the victim's (Individual #3)[3] attorney spoke on the victim's behalf about, among other things, the impact the defendant's fraud had on her life; the victim was a minor at the time of the defendant's crime began and a young adult, new to motherhood, at the time of sentencing.  (See Transcript of December 2, 2021 Sentencing ("T") at 7-16, attached hereto as Exhibit A.)  The victim's attorney spoke about the victim's lack of money to purchase food, pay for an education, and save for her family. (Id.)

When explaining the Court's sentence, with respect to the minor victim in particular, Your Honor stated, in pertinent part, as follows:

> The seriousness of this offense cannot be overstated.  The defendant's crime is particularly reprehensible because he is an attorney and officer of the court.  His fraud, which was motivated by greed was perpetrated against a minor victim, depriving her of

---

months' imprisonment.  In that circumstance, the government would not have stood by the Guidelines range in the plea agreement, as a sentence of 37 to 46 months' imprisonment was not—and is not—sufficient, but not greater than necessary, to achieve the goals of sentencing.  In any event, regardless of whether or not the defendant should have been subjected to a leadership enhancement, because he caused substantial financial hardship, he is disqualified from receiving a zero-point offender reduction.

[2] In estimating the applicable Guidelines range in the plea agreement, the government inadvertently failed to include a two-point role adjustment for being an organizer under U.S.S.G. § 3B1.1(c).

[3] Individual #3 is identified in the Superseding Indictment and in the PSR.

monies to which she was entitled, and thereby depriving her of all that such resources could have done for her.

. . .

I find the harm inflicted on Individual #3, the rightful heir, to be substantial.  As set out in her victim statement, she was deprived of a life where she would have been raised in comfort, security, and relative abundance.  Instead, because of the defendant's conduct, she got nothing.

(Id. at 44-45.)

Your Honor adopted the government's Guidelines calculation from the plea agreement.  (Id. at 4-5, 16-17.)  After careful consideration of the factors set forth in § 3553(a), Your Honor sentenced the defendant to 57 months' imprisonment, two years' supervised release with a special condition requiring him to perform 2,000 hours of community service, restitution in the amount of $1.5 million, and forfeiture in the amount of $1.5 million.  (Id. at 41-48.)

The defendant was ordered to self-surrender by January 7, 2022.  (Id. at 51.) Following several requests to delay the self-surrender date, the defendant finally surrendered on or about February 4, 2022.  The defendant is currently in BOP prerelease custody at a Residential Reentry Management facility in Miami, Florida.  His scheduled release date is July 9, 2024, upon which he will have served approximately 29 months—or approximately 50%—of his 57-month sentence.[4]

II.     The Appeal

The defendant appealed this Court's sentence.  Specifically, the defendant argued that the district court's imposition of 2,000 hours of community service was unwarranted and exceeded the amount contemplated by the Guidelines.  The government conceded that the record was insufficient to uphold the imposition of 2,000 hours of community service and agreed that the special condition should be vacated and remanded to the district court.[5]

By Summary Order, dated February 24, 2023, the Second Circuit vacated, in part, and remanded for further proceedings only on the special condition of supervised release imposing 2,000 hours of community service.  In doing so, the Circuit Court

instruct[ed] the district court to determine whether the imposition of the special condition is reasonably related to the factors set forth in U.S.S.G. § 5D1.3(b)(1) and, if it is, to explain the reasons for imposing the condition and to determine a number of hours that

_____

[4] See Federal Bureau of Prisons Inmate Locator, available at https://bop.gov/inmateloc/ (last accessed February 29, 2024).

[5] The government requested that the case be remanded for plenary resentencing.

3

"[involve[s] no greater deprivation of liberty than is reasonably necessary for th[ose] purposes," id. § 5D1.3(b)(2).

On March 17, 2023, the Second Circuit issued its Mandate. See Defense Exhibit A. The defendant requested a delay in his resentencing in order to complete the RDAP program. (ECF 168.)

## III.    The Instant Motion

On February 9, 2024, the defendant filed the instant motion, seeking (1) resentencing following appeal, pursuant to the Second Circuit Mandate; and (2) a reduction in his sentence based on the "zero-point offender" amendment.[6]  The government submits that the defendant must be resentenced consistent with the Second Circuit Mandate only.

With respect to the zero-point offender amendment, the defendant seeks at least an eleven-month reduction, to 46 months or less, under 18 U.S.C. § 3582(c)(2).  In support of that relief, he correctly observed that on November 1, 2023, amendments to the Guidelines were issued, some of which apply retroactively.  One of those amendments—discussed in greater detail below—reduces by two points the offense level of a defendant who was determined to have zero criminal history points and whose crime did not involve certain aggravating factors (the "Zero Point Amendment").  The defendant claims that, by operation of the Zero Point Amendment, his offense level is two points lower than it was assessed at the time of his sentencing and requests a sentence reduction to account for that fact.  Specifically, the defendant requests a sentence within a Guidelines range of 37 to 46 months' imprisonment.  For the reasons set forth herein, the defendant does not qualify for a zero-point offender reduction.

## IV.    Applicable Law

The Zero Point Amendment "created a new Chapter Four guideline at § 4C1.1 . . . to provide a decrease of two levels from the offense level [otherwise] determined for defendants who did not receive any criminal history points . . . and whose instant offense did not involve specified aggravated factors."  See U.S.S.G. § 1B1.10, App. Note 7.  Among other requirements, a defendant only qualifies if "(6) the defendant did not personally cause substantial financial hardship."[7]

---

[6] Probation issued an undated Supplemental Presentence Report, which is attached as Exhibit B to the defendant's motion.  In its supplemental report, Probation incorrectly determined that the defendant should receive the two-level zero-point offender reduction.

[7] Under that new section, a defendant with zero criminal history points is eligible for a two-level reduction to his offense level if: (i) he did not receive an adjustment under § 3A1.4 (Terrorism); (ii) he did not use violence or credible threats of violence in connection with the offense; (iii) the offense did not result in death or serious bodily injury; (iv) the offense is not a sex offense; (v) he did not personally cause substantial financial hardship; (vi) he did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon; (vii) the offense is not covered by § 2H1.1 (Offenses Involving Individual Rights); (viii)

4

As part of this analysis, § 4C1.1(b)(3) requires consideration of the non-exhaustive list of factors in application note 4(F) to § 2B1.1  As application note 1 to § 4C1.1 provides, this criterion should be determined independent of § 2B1.1; that is, whether or not the defendant received the "substantial financial hardship" adjustment under § 2B1.1(b)(2).  Unlike § 2B1.1 (which may apply even if a coconspirator was the only person who personally caused substantial financial hardship), this is a defendant-based criterion, and not what may otherwise be attributed to the defendant through operation of relevant conduct in § 1B1.3.

V.    Discussion

As outlined above, in order to be eligible for relief under § 4C1.1, a defendant must meet all of the requirements.  Among the enumerated factors rendering the defendant ineligible for relief, subsection (6) provides that the defendant "did not personally cause substantial financial hardship."  The defendant cannot satisfy his burden that he did not cause a substantial financial hardship to the victim, Individual #3, when he stole $3,000,000 in wrongful death proceeds.  Indeed, as noted above, this Court has already found that the defendant caused substantial financial harm to the victim and "deprived [her] of a life where she would have been raised in comfort, security, and relative abundance.  Instead, because of the defendant's conduct, she got nothing." (T. at 44-45.)  Because the defendant did cause substantial financial hardship to the victim (Individual #3), he is disqualified from receiving a two-level reduction under this section.

VI.   Conclusion

Accordingly, for the reasons set forth above, this Court should (1) resentence the defendant consistent with the Second Circuit's Mandate, limited only to the special condition of supervised release imposing 2,000 hours of community service; and (2) deny the defendant's request for a two-level reduction under the Zero Point Offender Amendment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    _____/s/_____
Catherine M. Mirabile
Assistant U.S. Attorney
(631) 715-7850

cc:    Matin Emouna, Esq. (by ECF and email)
Counsel for Defendant

---

he did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and (ix) he did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.  See U.S.S.G. § 4C1.1(a)(2)-(10).